UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RONALD A. CHISHOLM, LTD.                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:09-CV-00808-CRS-JDM

AMERICAN COLD STORAGE, INC. and                              DEFENDANTS &
AMERICAN COLD STORAGE                                 THIRD PARTY PLAINTIFFS
NORTH AMERICA, LP

v.

ABILENE TEXAS FOODS, INC.                                  THIRD PARTY DEFENDANT

## MEMORANDUM OPINION

Before the court is Third Party Defendant, Abilene TX Foods's (hereinafter, "Abilene") Motion for Summary Judgment on the claims against it by Defendants/Third Party Plaintiffs American Cold Storage Inc., and American Cold Storage North America, LP (collectively, "ACS"). Abilene requests summary judgment on the theory that shifting any of ACS's liability to Abilene through contribution or indemnity would be improper because the Plaintiff's claims against ACS are not based in tort (DN 58).

For the reasons set forth herein, the court finds that no genuine issue of material fact exists and Abilene is entitled to summary judgment as a matter of law because the Plaintiff's claims against ACS are purely contract-based.

## BACKGROUND

This case arises from a series of contractual relationships among three parties: the Plaintiff, Ronald A. Chisholm, Ltd. ("Chisholm"), an international meat seller; Abilene, a meat processor and reseller; and ACS, the owner of a cold storage facility that stored both Chisholm's and Abilene's meat products.

Beginning in 2007, Abilene contracted to purchase meat products from Chisholm. On August 15, 2008, Abilene and Chisholm entered into a Master Product Supply Agreement ("MPSA"), in which the parties agreed that Chisholm would supply meat products to Abilene and Abilene would process and sell the meat to Abilene's customers and remit the sales proceeds to Chisholm (DN 29).[1] ACS stored both Abilene's and Chisholm's products in its cold storage facility. On September 29, 2008, Chisholm authorized ACS to give Abilene access to Chisholm's inventory. Specifically, Chisholm's email to ACS stated: "Abilene TX Foods is allowed to have access to Chisholm's inventory and paperwork until further notice. If [ACS] ha[s] any questions, please contact [Chisholm], otherwise, please forward paperwork to [Abilene] when requested." (DN 62-1, 4). Based on this email, ACS believed Chisholm authorized ACS to release Chisholm's meat products to Abilene upon Abilene's request.

On October 7, 2009, Chisholm commenced an action against ACS alleging ACS released Chisholm's meat products to Abilene without permission (DN 58-1). Chisholm then filed an

---

[1] Pursuant to the MPSA, the parties agreed that Abilene would sell Chisholm's meat to Abilene's customers and remit the sales proceeds to Chisholm. The purpose of the arrangement was to allow Chisholm to recoup money that Abilene owed from failing to pay for prior meat purchases. Then, in late April and early May 2009, after the parties had been operating under the MPSA, Chisholm audited its meat inventory and found meat was missing from ACS's cold storage facility. It is undisputed that Abilene sold Chisholm's meat and failed to remit the proceeds to Chisholm as required under the MPSA and this claim for summary judgment arises from ACS's alleged unauthorized release of Chisholm's meat to Abilene (DN 45).

Amended Complaint against ACS alleging: (1) breach of contract, (2) breach of fiduciary duty, and (3) breach of a bailment agreement (DN 62-1).

On August 27, 2010, with permission from the court, ACS filed a Third-Party Complaint against Abilene seeking (1) indemnification from Abilene based on the theory that if Chisholm sustained damages due to the unauthorized release of its meat products, the damages were created by the acts or omissions of Abilene, or in the alternative (2) contribution commensurate with Abilene's degree of fault in causing Chisholm's damages (DN 58-1). After ACS filed the Third-Party Complaint against Abilene, Chisholm filed a Cross-Claim against Abilene alleging a variety of causes of action (DN 3). However, Chisholm's cross-claims are not relevant to Abilene's Motion for Summary Judgment against ACS.

At issue before the court now is Abilene's argument that ACS's claims for indemnity and contribution are not legally maintainable. This in turn raises the question of whether Chisholm's claims against ACS sound in tort, which would allow ACS to claim indemnity and contribution against Abilene.

Abilene argues that because Chisholm's underlying claims against ACS are based in contract, contribution and indemnity claims against Abilene are not available. Abilene also argues that ACS cannot assert a claim for contribution for Abilene's proportionate share of fault if ACS is held liable for Chisholm's damages because Kentucky courts abrogated contribution actions in favor of comparative fault through apportionment (DN 58-1, 6).

ACS responds that Chisholm's claims against it are, in whole or in part, tort claims and that therefore its indemnity and contribution claims against Abilene are viable (DN 62).

I

Abilene requests summary judgment under Federal Rule of Civil Procedure 56(a), which states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party moving for summary judgment bears the initial burden of specifying a basis for its motion by demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Not every factual dispute between the parties will prevent summary judgment, and the disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). After the moving party meets this burden, the nonmoving party bears the burden of showing "specific facts showing that there is a genuine issue for trial." *Id.* at 248 (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Thus, the ultimate burden of demonstrating the existence of a genuine issue of material fact lies with the party opposing the motion. *See id.* at 247-48.

However, the evidence must be construed in the light most favorable to the party opposing the motion. *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962)). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255. Plaintiffs must offer evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at 322. A "mere scintilla of evidence is insufficient" because there must be evidence on which a jury could find for the nonmoving party. *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (*quoting Anderson*, 477 U.S. at 252)).

In this case, Abilene argues that all three of Chisholm's claims against ACS are wholly contractual—claims for breach of contract, breach of fiduciary duty, and breach of a bailment agreement. In support of this argument, Abilene contends that (1) each of Chisholm's claims against ACS invoke a contract; (2) there is no other basis for Chisholm's claims aside from the alleged contract; (3) Chisholm did not allege any duties owed by ACS outside the scope of the contract which would trigger the "independent duty exception" for contract claims, and (4) the "economic loss doctrine," which traditionally favors contract claims over tort claims, applies to limit Chisholm's claims to contract causes of action. Therefore, Abilene argues that the contractual nature of Chisholm's claims precludes ACS from pursuing common law tort-based relief for indemnification and contribution from Abilene (DN 58-1, 4).

## II

In Kentucky, claims for indemnity and contribution arise only if a party identifies a viable underlying tort claim. *See Ohio River Pipeline Corp. v. Landrum*, 580 S.W.2d 713, 719-720 (Ky. Ct. App. 1979) (*citing V.V. Cooke Chevrolet, Inc. v. Metro. Trust Co.*, 451 S.W.2d 428, 420 (Ky. 1970)). Indemnity and contribution are separate and distinct and apply to different fact situations. *Id.*; *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 779 (Ky. 2000). Kentucky law now obviates claims for contribution among joint tort-feasors in favor of apportionment. *See* KRS § 411.182. Contribution "distributes the loss among the tort feasors by requiring each to pay a share of the injured party's loss." *Ohio River Pipeline Corp.*, 580 S.W.2d at 719-720. Like contribution, "apportionment is concerned with the distribution of loss among joint tort-feasors." *Id.* at 719. Accordingly, even though there is no cause of action for contribution in Kentucky, we will analyze ACS's claim as if it were one for apportionment. *See* KRS § 411.182.

Similarly, common law indemnity is "shifting the entire loss from one tort feasor who has been compelled to pay it to the shoulders of another who should bear it instead." *Ohio River Pipeline Corp.,* 580 S.W.2d at 719. In other words, in the absence of a contractual indemnity obligation, a party may be entitled to indemnity if its liability is the result of a wrongful act of a tort feasor. *Celina Mut. Ins. Co. v. Harbor Inc. Agency, LLC*, 332 S.W.3d 107, 113-14. Thus, common law indemnity would also require ACS to identify a viable underlying tort claim.

### III

Under Kentucky law, the failure to perform a contractual obligation typically does not give rise to a cause of action in tort. There is a narrow exception to this rule, the "independent legal duty" exception. *Mims v. W.S. Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007). "[I]f a plaintiff can establish the existence of an independent legal duty, [then] he may maintain an action in tort even though the acts complained of also constitute breach of contract." *Mims*, 226 S.W.3d at 836 (*quoting Jones v. Hartford Life & Accident Ins. Co.*, 443 F. Supp. 2d 3, 5 (D.C. Cir. 2006)).

The Kentucky Supreme Court only recently adopted the economic loss rule in *Giddings & Lewis v. Industrial Risk Insurers*, 348 S.W.3d 729 (Ky. 2011). Under the economic loss rule, the availability of a contract or tort action is determined by the source of the duty the plaintiff claims the defendant owed, not merely the label of the cause of action:

> [a] breach of contract between the parties must be redressed under contract, and a tort action will not lie. [However, if there is a] breach of duty *arising independently* of any contract duties between the parties, [that] may support a tort action. . . . The question of whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court. . . . [a] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.

*Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 589-90 (Ky. 2004) (*quoting Town of Alma v. Azco Constr., Inc.*, 10 P.3d. 1256, 1262-64 (Colo. 2000)).

Abilene concedes that the labels Chisholm applied to the claims in its Amended Complaint do not determine the nature of Chisholm's causes of action. *See Minger v. Green*, 239 F.3d. 793, 799 (6th. Cir. 1955). Abilene contends that the nature of Chisholm's claims do not establish that ACS owed any independent legal duties to Chisholm outside the scope of their contract that would trigger the exception to allow a claim to be brought in tort (DN 63, 2). In sum, Abilene argues that Kentucky law does not permit shifting contractual liability through indemnity, contribution, or apportionment because each of Chisholm's claims are expressly premised on the contract between Chisholm and ACS, and ACS does not identify any independent duty to support a tort claim (DN 63).

ACS counter argues that both Chisholm's claims for breach of fiduciary duty and for breach of contractual bailment are tort or quasi-tort actions under the economic loss rule. ACS also asserts that Chisholm's breach of contract claim is a tort action under the independent duty exception based on Chisholm's allegation that ACS failed to exercise "reasonable care" with respect to releasing Chisholm's meat products in its Amended Complaint (DN 62-1). ACS further argues that Chisholm's breach of contract claim is a tort claim because Chisholm's damages were the result of Abilene's tortious conduct. ACS alleges Abilene caused Chisholm's damages because Abilene requested that ACS release Chisholm's meat products and then Abilene failed to pay Chisholm for the products Abilene sold. (DN 62-1, 6).

Analyzing the independent duty exception, the court finds that the breach of fiduciary duty claim arose from ACS's alleged failure to perform under the contract and that ACS does not

establish that any other independent legal duty exists. Any fiduciary duty ACS owed to Chisholm was wholly contractual, and Chisholm's pleadings indicate ACS's duty was articulated in the contract and therefore not based on an independent duty (DN 21). Abilene supports this argument by citing Chisholm's Amended Complaint alleging "[b]y and through the parties' contract for cold storage services, ACS assumed a fiduciary duty to Chisholm with regard to the receipt, storage, and delivery of Chisholm's property," and that ACS committed a "material breach of the fiduciary duty that they owe to Chisholm pursuant to the parties' contract for cold storage services." (DN 21). Both of Chisholm's claims in the Amended Complaint indicate that the basis of ACS's alleged fiduciary duty was contractual. Additionally, ACS fails to identify any independent legal duty outside the scope of the contract to trigger the independent duty exception. Therefore, ACS's argument that a breach of fiduciary duty claim is necessarily tort-based fails.

     ACS's economic loss argument regarding the breach of fiduciary duty and breach of contractual bailment claims also fails. ACS argues that under the economic loss rule, Chisholm's breach of fiduciary duty claim is a tort claim because "some torts are expressly designed to remedy purely economic loss (e.g., professional negligence, fraud, and breach of fiduciary duty)." *Presnell,* 134 S.W.3d at 589. However, ACS does not argue that the breach of fiduciary duty claim arose from any relationship other than that created by the contract between Chisholm and ACS. Instead, ACS's allegation is based on a parenthetical reference in *Presnell* and an incomplete analysis of the case. Under *Presnell*, for a breach of a contractual duty to support a tort claim, the breach must "arise independently" from the contract. *Id.* at 589-90. Therefore, the breach of fiduciary duty claim between Chisholm and ACS is purely a matter of contract law.

## IV

A bailment claim may be brought as a tort cause of action under some circumstances, such as when there is no bailment contract, or when a duty exists independent of the contract. However, here the bailment claim arose out of a contract for bailment between Chisholm and ACS. Chisholm's Amended Complaint alleges "[t]he contract for cold storage services between Chisholm and ACS is a contract for bailment. By and through the contract, [ACS] accepted Chisholm's property as a bailee for hire." (DN 21).

ACS argues that under Kentucky law, although a bailment agreement contains contractual elements the breach of a contractual bailment may be a tort cause of action.

> [T]he bailee must exercise ordinary care and diligence in safeguarding the property and is liable for injury to, or loss of, the property resulting from his failure to do so, but is not liable for the injury or loss of the property not resulting from negligence on his part, or that of his agents or employees. . . . [However] most actions for lost profits are based on breaches of contractual duties while most actions involving physical injuries to persons are based on common law duties of care.

*Monarch Warehouse Co. v. Major Breckenridge Corp.*, 518 S.W.2d 779, 781 (Ky. 1975) (*quoting Webb v. McDaniels*, 205 S.W.2d 511, 513 (Ky. 1947)). ACS also argues that even under a contractual bailment, a bailee is liable in tort for injury to the bailed property during bailee's use, or use by others with bailee's consent, "which was neither expressly nor impliedly authorized by the contract of bailment" even if the injury resulted from an accident, and not negligence. *Walter v. Louisville Ry. Co.*, 150 S.W. 824, 826 (Ky. 1912).

Even though noncompliance with bailment terms allows a plaintiff to elect to sue in contract or in tort, under Kentucky law, a plaintiff must elect whether to proceed in contract or in tort for claims arising from the same factual circumstances. *See Cincinnati N. O. & T. P. Ry. Co. v. Dority*, 166 S.W.2d 996, 996 (Ky. 1942); *see Beaver Dam Coal Co. v. Brashear*, 54 S.W.2d

609, 610 (Ky. 1932). Moreover, recent Kentucky case law applied the economic loss rule to bar tort claims that simply mirror claims for breach of contract in order to prevent contract law from "drown[ing] in a sea of tort." *See Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848-49 (6th Cir. 2002) (*quoting E. River S.S. Corp. v. Transamerica Deleval, Inc.*, 476 U.S. 858, 866 (1985)). The economic loss doctrine preserves the distinction between contract and tort law, "[w]here tort law is well-suited to redressing injuries to persons or property, contract law is well-suited to distributing the risk of economic loss." *Id*. at 851. Additionally, three policies support applying the economic loss rule: "(1) it maintains the historical distinction between tort and contract law; (2) it protects parties' freedom to allocate economic risk by contract; and (3) it encourages the party best suited to assess the risk of economic loss . . . to assume, allocate, or insure against that risk." *Id*. at 848.

Although the bailment contract between Chisholm and ACS incorporates certain duties, Chisholm's bailment claim sounds in contract because the economic loss rule applies. Chisholm's bailment claim arose entirely from Chisholm's contract for cold storage with ACS, and ACS fails to articulate an existing legal duty independent of the contract. Therefore, the economic loss rule requires the breach of bailment claim to sound in contract. Application of the economic loss rule is supported by Chisholm's allegation that the duty ACS owed Chisholm arose from the contract, as Chisholm's Amended Complaint states, "[b]y and through the contract, ACS accepted Chisholm's property as a 'bailee for hire.'" (DN 21).

It is undisputed that the bailment contract incorporates verbatim the duty of care required for warehousemen in Kentucky.[2] The contract states that ACS shall not be liable to Chisholm for

---

[2] *See* KRS § 355.7-204, which states:

-10-

any loss, damage, or destruction to the "GOODS" unless caused by a "failure to exercise such care in regard to the "GOODS" as a reasonably careful man would exercise under like circumstances." (DN 21). Applying the economic loss rule here preserves the distinction between contract law and tort law as the rule is intended to do. *See Mt. Lebanon*, 276 F.3d at 849.[3]

The heart of ACS's argument is that Chisholm could have brought its breach of bailment claim in tort, thus Chisholm's claim necessarily arises in tort. Although Chisholm could have elected to bring the breach of bailment suit in tort as a negligence or conversion claim, instead Chisholm chose to rely on contractual bailment as the basis for its claim. Therefore, the breach of bailment claim arises in contract.

V

Addressing Chisholm's breach of contract claim against ACS, Abilene argues that the claim is based in contract because it "obviously is contractual in nature." (DN 58-1, 3). Conversely, ACS alleges Chisholm's breach claim is grounded in tort on the theory that Abilene's alleged intentional torts caused ACS's breach. In support of this argument ACS identifies Chisholm's Amended Complaint which states that "[a]s a result of ACS's improper

---

A warehousemen is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

[3] Because the economic loss rule negates ACS's argument that Chisholm's bailment claim sounds in tort, the court will not address ACS's contention that Chisholm's bailment claim is controlled by the warehousemen's duty of care in section 7-204 of Kentucky's Uniform Commercial Code. The statutory duty ACS identifies does not satisfy the independent duty exception because the contract between Chisholm and ACS incorporates the terms of the statute verbatim (DN 63, 5-6). Thus, ACS's argument fails because the statutory duty of care is not independent from the contractual duty of care to which the parties expressly agreed. ACS's statutory argument simply reaffirms that the economic loss rule applies to this breach of bailment claim because Chisholm elected not to bring its claim in tort as a negligence or conversion claim.

-11-

and unauthorized release of Chisholm's product, Chisholm has suffered losses and damages." (DN 21). In other words, ACS alleges the breach of contract claim sounds in tort because Chisholm's claims against ACS are tantamount to establishing that Abilene interfered with ACS's contractual relationship with Chisholm when Abilene allegedly converted Chisholm's product for Abilene's own use (DN 62-1).

The breach of contract claim also sounds in contract. ACS neither identifies a duty outside of the scope of the contract to show that the breach of contract claim meets the independent duty exception, nor does ACS contend that the nature of the breach of contract claim triggers the economic loss rule (DN 62). Therefore, all three of Chisholm's claims against ACS are contractual in nature.

## VI

Abilene contends that if Chisholm prevails against ACS because ACS breached its contractual obligations then ACS cannot shift the blame for its own breach of contract to Abilene (DN 62). Abilene also contends that because apportionment and indemnity remedies—the crux of Abilene's motion for summary judgment against ACS—are designed to shift liability among tortfeasors, that ACS's claims against Abilene must fail because ACS cannot identify a viable underlying tort claim between Chisholm and ACS.

Abilene contends that even though Chisholm has asserted a Cross-Claim against it alleging at least one tort cause of action, it is not the Cross-Claim that controls the outcome of this motion for summary judgment. Abilene requests that the court enter summary judgment in its favor because all three of Chisholm's claims against ACS are premised entirely upon the parties' contractual relationship, and as a result ACS has no basis for seeking tort-based relief.

The court agrees with Abilene. The only causes of action Chisholm alleges against ACS sound in contract, thus ACS cannot seek tort remedies of apportionment or indemnity.

Summary judgment for Abilene is appropriate. A separate order will be entered in accordance with this opinion.

October 30, 2012

**Charles R. Simpson III, Judge**
**United States District Court**