UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


RONALD A. CHISHOLM, LTD.                                        PLAINTIFF


v.                                                    NO. 3:09-CV-00808-CRS


AMERICAN COLD STORAGE, INC.
and AMERICAN COLD STORAGE
NORTH AMERICA, LP                                    DEFENDANTS and THIRD
                                                           PARTY PLAINTIFFS


v.


ABILENE TEXAS FOODS, INC.                        THIRD PARTY DEFENDANT


## <u>MEMORANDUM OPINION</u>

This case is before the court on a motion for partial summary judgment by the Plaintiff,

Ronald A. Chisholm, Ltd. ("Chisholm"), against the Third Party Defendant, Abilene Texas

Foods, Inc. ("Abilene") (DN 64). The court will also address motions for summary judgment

regarding Abilene's counterclaims against Chisholm (DNs 48 and 64), and Chisholm's cross

claims against Abilene (DNs 45 and 71).

## BACKGROUND

This case arose from a series of contractual relationships among three parties: the

Plaintiff, Chisholm, an international meat seller; Abilene, a meat processor and reseller; and

American Cold Storage ("ACS"), the owner of a cold storage facility that stored both Chisholm's

and Abilene's meat products. Beginning in 2007, Abilene contracted to purchase meat products

from Chisholm on credit. In early 2008, Abilene stopped making timely payments and reached

its credit limit with Chisholm. Chisholm then stopped shipping meat to Abilene. Thereafter the parties negotiated to resolve Abilene's arrearage.

### The Master Product Supply Agreement

The following facts are undisputed: on August 15, 2008, Abilene and Chisholm entered into the Master Product Supply Agreement ("MPSA"), the contract which is at issue here. In the MPSA, the parties agreed that Chisholm would supply meat products to Abilene. Abilene would process and sell the meat to Abilene's customers, and Abilene would remit the sales proceeds to Chisholm (DN 64-1). The purpose of the MPSA was to allow Chisholm to recoup Abilene's debt. Pursuant to the MPSA, after Abilene repaid its debt to Chisholm, then Chisholm and Abilene would split the profits on all of Abilene's subsequent sales to its customers.

ACS stored both Abilene's and Chisholm's products in its cold storage facility. Chisholm retained ownership of its meat at ACS at all times until Abilene's customers were invoiced for it. To facilitate Abilene's sales under the MPSA, Chisholm authorized ACS to give Abilene access to Chisholm's inventory and to release Chisholm's meat products to Abilene upon Abilene's request. However, Abilene was required to have its requests approved by Chisholm before ACS released any of Chisholm's meat.

On November 11, 2008, the parties amended the MPSA and agreed, among other things, that although the MPSA expired on March 31, 2009, Abilene could not terminate the MPSA until it paid its debt to Chisholm in full. However, later that month, Chisholm notified Abilene that it would not extend the MPSA beyond the expiration date and told Abilene to find another source of financing.

In April and May 2009, after operating under the MPSA until its expiration, Chisholm audited its meat inventory and found that meat was missing from its account at ACS's facility.[1] Based on Abilene's invoices, inventory records, and bills of lading, Chisholm determined that 0Abilene removed meat from Chisholm's account at ACS without paying Chisholm for it. The records that Chisholm acquired from Abilene show that the loss began in December 2008— immediately after Chisholm advised Abilene that it would not extend the MPSA—and the losses continued until May 2009 when Chisholm audited its account at ACS.

### The September 2009 Purchase Order

Thereafter, the parties negotiated a purchase order to reduce the balance that Abilene owed Chisholm. Abilene contends that there was an arrearage due to both parties when Chisholm discovered that Abilene improperly removed meat products—specifically, Abilene claims that Chisholm owed Abilene processing fees. However, Abilene also admits that it owed Chisholm more money than Chisholm allegedly owed in processing fees (DN 64-1).

The negotiations culminated in Chisholm's agreement to sell Abilene the salvaged meat from the ACS facility at an "up charge"[2] to cover part of Abilene's arrears and losses. This agreement was memorialized in a purchase order on September 23, 2009. Chisholm asserts that it agreed to the purchase order with Abilene in an effort to mitigate Abilene's outstanding debt— the amount that Abilene owed Chisholm from its failure to pay for the meat purchased on credit, and to cover the amount it owed Chisholm from improperly selling Chisholm's meat.[3]

---

[1] Chisholm's meat inventory audit was disrupted by an ammonia leak at ACS's facility. This leak spoiled a portion of Chisholm's meat inventory. Following the leak, Chisholm agreed to sell Abilene the salvaged meat at an up-charged price in an effort to mitigate Abilene's debt.

[2] The meat at issue in the up-charge arrangement was the salvaged meat at the ACS facility—the meat that was usable after the ammonia leak at ACS destroyed part of Chisholm's meat products (DN 64-1).

[3] Chisholm asserts that Abilene owed $4.288 million in arrears, while Abilene asserts that it owed $4.089 million (DN 64-1). The September 23, 2009 purchase order concerned $4,089,442.17 of Chisholm's product (DN 41-4).

In the September 23, 2009 purchase order Abilene agreed to buy over $4 million worth of Chisholm's salvaged meat from ACS. The meat was priced at an up-charge—a price that was higher than what Chisholm paid for it—to cover part of Abilene's arrears and losses (DN 64-1). Chisholm alleges that it accepted the purchase order based on Abilene's promise to make up the difference in the parties' calculations of Chisholm's total loss "on the back end." (DN 64-1, Ex. 3 Hoey dep.). However, the parties had not—and subsequently have not—agreed about the exact amount that Abilene owed to Chisholm.[4]

We will first address Chisholm's contention that it is entitled to summary judgment against Abilene regarding Abilene's liability for breach of the MPSA (DN 64). For the reasons set forth herein, we see no genuine issue of material fact with regard to Abilene's liability for breaching the MPSA. Thus, we will grant Chisholm's motion for partial summary judgment as a matter of law. However, this ruling is limited to the issue of Abilene's breach and does not extend to the issue or amount of damages, if any, that Abilene owes Chisholm.[5]

Second, we will address Chisholm's motion for summary judgment regarding Abilene's counterclaims (DN 64-1). Abilene's counterclaims assert that Chisholm is liable for breach of contract, breach of a settlement agreement, and breach of fiduciary duty and the implied covenant of good faith and fair dealing (DN 48). Abilene also makes a demand for equitable accounting (DN 48). For the reasons set forth herein we will grant Chisholm's motion for summary judgment.

---

[4] Abilene's argument that Chisholm has no damages to claim in its motion for summary judgment fails (DN 70) and we will grant partial summary judgment on the issue of Abilene's breach. It is undisputed that Abilene has paid Chisholm between $3.7 - 3.9 million of the $4,089,442.17 due under the purchase order since September 2009. Although a balance remains due on the purchase order and the damages for Abilene's breach of the MPSA are disputed, we will not deny summary judgment because Abilene disputes the amount of damages (DN 70).
[5] Chisholm's motion addresses only the issue of Abilene's liability for breach of the MPSA (DN 64-1). Chisholm admits that the amount of damages is in dispute (DN 64-1).

Third, we will address Abilene's motion for partial summary judgment regarding Counts II, IV, and V of Chisholm's cross claims (DN 71-1). Chisholm's cross claims assert that Abilene is liable for: Count I, breach of contract; Count II, breach of the covenant of good faith and fair dealing; Count III, unjust enrichment; Count IV, violation of the Packers and Stockyards Act ("PASA") and conversion; and Count V, fraud (DN 45). Chisholm also asserts that it is entitled to an award for punitive damages (DN 45). For the reasons set forth herein we will deny Abilene's motion for partial summary judgment.

## STANDARD

Fed. R. Civ. P. 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party moving for summary judgment bears the initial burden of specifying a basis for its motion by demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Not every factual dispute between the parties will prevent summary judgment—the disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). After the moving party meets this burden, the nonmoving party bears the burden of showing "specific facts showing that there is a genuine issue for trial." *Id.* at 248 (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Plaintiffs must offer evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at 322. A "mere scintilla of evidence is insufficient" because there must be evidence on which a jury could find for the nonmoving party. *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (*quoting Anderson*, 477 U.S. at 252)).

However, the evidence must be construed in the light most favorable to the party opposing the motion. *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962)). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255.

## DISCUSSION

### I.    Breach of Contract

Chisholm's motion (DN 64) argues that partial summary judgment against Abilene is appropriate because Abilene breached the MPSA by selling Chisholm's meat without permission and failing to remit the sales proceeds to Chisholm (DN 64-1).

Abilene's response argues that we should deny summary judgment because Chisholm has no damages to recover—Abilene contends that it has already paid Chisholm more than it owed under the MPSA (DN 70). Abilene also argues that the September 2009 purchase order settled all the claims between the parties. In the alternative, Abilene contends that whether or not the purchase order was a settlement is a disputed fact, making summary judgment inappropriate.

### A.  The MPSA is Unambiguous and Enforceable

Abilene argues Chisholm breached the MPSA first, by failing to pay Abilene the processing fees to which it was allegedly entitled under the MPSA. Abilene also contends that Chisholm improperly "marked up" the meat by charging for freight costs, customs costs, and a trader margin (DN 64). These factual defenses fail.

Contract interpretation is a matter of law to be decided by the court. *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000). "In the absence of an ambiguity, Kentucky courts will enforce a written instrument strictly according to its terms and

will assign those terms their ordinary meaning." *Davis v. Siemens Med. Solutions USA, Inc.,* 399 F.Supp.2d 785, 792 (W.D. Ky. 2005) (*citing Frear v. P.T.A. Indus., Inc.,* 103 S.W.3d 99, 106 (Ky. 2003)). Thus, an initial question that must be resolved is whether the written instrument—the MPSA—is ambiguous. "A contractual term is ambiguous if it is reasonably susceptible to different or inconsistent interpretations." *Id.* (*citing Transp. Ins. Co. v. Ford,* 886 S.W.2d 901, 905 (Ky. Ct. App. 1994)). Unless the court finds a term to be ambiguous, it cannot "[u]nder Kentucky law . . . reference extrinsic facts or aids" to interpret its meaning. *Id.* (*citing Frear,* 103 S.W.3d at 106; 11 Richard A. Lord, *Williston on Contracts* § 30:6 (4th ed.)).

However, if the court finds ambiguity "apparent on the face of the instrument itself," *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000), it may consider statements made by the parties to interpret the ambiguous language without running afoul of the parole evidence rule's bar against "oral statements or writings made prior to or contemporaneous with a written agreement that contradict, vary or alter the language appearing in the writing." *Davis*, 399 F.Supp.2d at 793 (*citing, e.g., Luttrell v. Cooper Indus., Inc.*, 60 F.Supp.2d 629, 631 (E.D. Ky. 1998); *Johnson v. Dalton*, 318 S.W.2d 415, 417 (Ky. 1958); *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App.2002)). In other words, one cannot use parol evidence or assert, after the fact, that its terms do not say what the party intended them to say to create ambiguity in an otherwise unambiguous document. *Id.*; *Frear*, 103 S.W.3d 99 at 107. Also, with an unambiguous contract, reformation and other re-writing are prohibited. *Id.*; *see Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 164 (Ky. Ct. App. 1977).

Upon reviewing the MPSA, the court is satisfied—as a general matter—that its terms are sufficiently clear and unambiguous and that Kentucky law would not permit consideration of extrinsic facts or aids to determine their meaning. The court finds no ambiguity on the face of the

MPSA. Thus, precontractual statements are barred by the parol evidence rule and the parties may not use such evidence to create ambiguity or argue that reformation of the MPSA is appropriate.

Here, the plain language of the MPSA squarely addresses Chisholm's entitlement to a set off. The MPSA states: "**Set off.** The Supplier (Chisholm) and each of its related and associated companies may set off any sums due to Abilene (ATX) against monies owing by Abilene to Supplier or any other business of Abilene." (DNs 64-1, 41-4) (emphasis in original). Accordingly, we will enforce the provision strictly according to its terms. *See Republic/NFR & C Parking of Louisville v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 410 F.3d 888, 891 (6th Cir. 2005).

Moreover, Abilene admits that it owed more money to Chisholm—due to its failure to remit the proceeds of its sales to Chisholm—than Chisholm owed Abilene in processing costs (DN 64-1). Therefore, Chisholm's alleged failure to pay Abilene for processing is not a breach of the MPSA because the MPSA entitled Chisholm to set off those costs. Even if Chisholm does owe Abilene for processing, which we will not address here as it is goes to the issue of damages, Chisholm's alleged failure to pay for processing under the MPSA does not provide Abilene a defense for its breach.[6]

Similarly, Abilene's second defense also fails. Although the MPSA does not squarely address freight charges, the court will not re-write the MPSA to include contractual limitations

---

[6] Abilene argues that Chisholm cannot maintain an action for breach because Chisholm committed the first material breach. *See Williamson v. Ingram*, 49 S.W.2d 1005, 1006 (Ky. 1932) (holding that "a party who commits the first breach of contract is deprived of the right to complain of a subsequent breach by the other party."); *see also Amalgamated Indus., Ltd. v. Tressa, Inc.*, 69 Fed. App'x 255, 259 (6th Cir. 2003) (same). Here, however, this argument is inapplicable as the undisputed facts show that Abilene breached the MPSA first: (1) Chisholm's decision not to extend the MPSA past the stated expiration date is not anticipatory repudiation, as Abilene suggests. Chisholm did not prematurely end the MPSA—it allowed it to expire on the stated expiration date; Abilene had more than ninety days to arrange alternate financing to purchase Chisholm's meat; and Chisholm worked with Abilene to arrange alternate financing (DN 74). (2) Chisholm's decision to let the MPSA expire did not breach the covenant of good faith and fair dealing (DN 74); and (3) Chisholm did not fail to pay Abilene's processing fees, as the MPSA provided that Chisholm was permitted to off-set those fees (DN 64-1).

that were not anticipated or agreed upon by the parties. *See Davis*, 399 F.Supp.2d at 793; *Codell Constr. Co.*, 566 S.W.2d at 164. The MPSA addresses: (1) "**Sell Confirmations**" in section 3.1, which allows Chisholm and Abilene to enter separate contracts with additional terms and conditions beyond those outlined in the MPSA; (2) "**Product price and payment**" in section 5.1, which requires Abilene to "pay the Product Price for the Product supplied" pursuant to the MPSA "in accordance to the relevant Sell Confirmation;" and (3) the "Interpretation" section of the MPSA, which defines "Product Price" as the "price for the Product specified in the Sell Confirmation or such other price that is agreed to" by Abilene and Chisholm." (DNs 64-1, 41-4).

The unambiguous language of the MPSA leaves the price of the product to be determined by the Sell Confirmations. The MPSA also anticipates future negotiations for product price and related matters through the Sell Confirmations. Thus, we will not re-write or reform the MPSA to forbid Chisholm from including freight costs and related costs into the product price.

### B.  The Purchase Order is Not a Settlement

Abilene's contention that the September 23, 2009 purchase order is a settlement agreement regarding the parties' dispute over unpaid profits fails under Kentucky law.

"Settlement agreements are a type of contract and therefore are governed by contract law." *Humana, Inc. v. Blose*, 247 S.W.3d 892, 896 (Ky. 2008) (*quoting Frear*, 103 S.W.3d at 105)). Such an agreement is valid if it satisfies the requirements generally associated with contracts: (1) an offer, (2) an acceptance, (3) full and complete terms, and (4) mutual concessions of opposing claims. *McKim v. Newmarket Tech., Inc.*, 3:07-CV-337-H, 2008 WL 754739 (W.D. Ky. Mar. 18, 2008) *aff'd McKim v. NewMarket Tech., Inc.*, 370 F. App'x 600 (6th Cir. 2010) (*citing Hines v. Thomas Jefferson Fire Ins. Co.*, 267 S.W.2d 709, 711 (Ky. 1954)).

"[C]onstruction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Id.* at *5 (*quoting Frear*, 103 S.W.3d at 105).

"If ambiguity exists, 'the court will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written,' by evaluating extrinsic evidence as to the parties' intentions." *Id.*; *Frear*, 103 S.W.3d at 105 (*quoting Witlow v. Witlow*, 267 S.W.3d 739, 740 (Ky. 1954)). By contrast, where there is no ambiguity, the court must enforce the contract "strictly according to its terms . . . by assigning language to its ordinary meaning and without resort to extrinsic evidence." *Id.*

"In Kentucky, Plaintiffs must show that an actual agreement existed between the parties with clear and convincing evidence." *Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 364 (Ky. Ct. App. 2007) (*citing Indus. Equip. Co. v. Emerson Elec. Co.*, 554 F.2d 276, 288 (6th Cir. 1977)). While the agreement need not cover every conceivable term of the relationship, it must set forth the "essential terms" of the deal. *Id.*

Here, Chisholm maintains that the September 2009 purchase order was not intended to be a settlement. The undisputed facts show that the language of the purchase order is not ambiguous—it is not capable of more than one different, reasonable interpretation. Thus, we will not evaluate extrinsic evidence.[7] Neither the purchase order nor the surrounding negotiations

---

[7] Even if the purchase order were ambiguous, Abilene does not show that an actual settlement agreement existed between the parties. The only extrinsic evidence that Abilene offers of the parties' intention to settle is a statement that "the parties have real differences in their perceptions" of what was intended by the purchase order, and a footnote reference in its brief to Abilene's contention that Chisholm allegedly "manifested an intent to settle" (DN 70). Abilene cites, *Nat'l Info. & Commc'ns Equip. Network Inc. v Willigan*, CIV. 06-28-DLB, 2007 WL 2979928, *12 (E.D. Ky. Oct. 11, 2007) for the proposition that "disputed questions of contractual intent are considered factual issues which are ordinarily precluded from summary resolution." However, in *Willigan* the parties to the alleged contract came to an agreement that they did not reduce to writing and one party argued that the oral contract was enforceable because they began performance. Here, *Willigan* is unpersuasive. The issue in *Willigan* was whether or not the oral contract existed at all, unlike this case, where the purchase order clearly identifies that a contract existed—Chisholm agreed to sell, and Abilene agreed to purchase Chisholm's meat products.

-10-

indicate that Chisholm accepted it as a full and final settlement of Abilene's debt. In fact, Abilene admits that Chisholm never accepted the amount of money that Abilene proposed as a final settlement of the debt it owed to Chisholm (DN 64-1).[8]

Abilene's argument is further weakened because Abilene does not show that Chisholm knew or considered performance of the purchase order to be a settlement and Chisholm continued to demand payment for the entire balance—an amount above the purchase order price—after Chisholm accepted the purchase order (DN 64-1). Accordingly, we find that one required element of a settlement contract is absent—mutual concession of opposing claims.

Even if the purchase order is read as Abilene's offer of settlement, the facts do not show that Chisholm accepted the offer. Therefore, a second element—acceptance—is also absent. Abilene does not identify evidence to establish a genuine issue of material fact regarding the elements of the settlement agreement. Under the facts of this case, the purchase order is not a settlement agreement.

### C.  Chisholm has a Duty to Mitigate Abilene's Damages

Chisholm had a duty to mitigate the damages that arose from Abilene's breach of the MPSA. The Sixth Circuit follows the mitigation doctrine in breach of contract cases. *Katch v. Speidel, Div. of Textron, Inc.*, 746 F.2d 1136, 1140 (6th Cir. 1984) (*citing* McCormick, *Damages*, § 33, p. 127)). Under this doctrine, the non-breaching party cannot recover damages that could have been avoided and must use "such means as are reasonable under the circumstances to avoid or minimize damages." *Id.*; *Akers v. Alvey*, 180 F.Supp.2d 894, 901 (W.D. Ky. 2001); *U.S. Bond & Mortg. Corp. v. Berry*, 61 S.W.2d 293, 298 (Ky. 1933) (holding

---

[8] It is undisputed that Chisholm expressed that its "break even" number was $4.288 million, while Abilene contended that it owed Chisholm only $4.089 million (DN 64-1).

that in breach of contract cases, the non-breaching party must mitigate his damages by using reasonable exertion, expense, and diligence to minimize the loss resulting from the breach).

Here, Abilene does not show evidence to contradict Chisholm's assertion that negotiating and accepting the purchase order was a reasonable effort to mitigate Chisholm's loss.[9] We will not penalize Chisholm for mitigating its loss by barring it from recovering damages.

In sum, there is "no genuine need for a jury trial" here because no "reasonable jury" could return a verdict in favor of Abilene on the issue of whether or not Abilene breached the MPSA. *See Anderson*, 477 U.S. at 248. Thus, we will grant Chisholm's motion for partial summary judgment with regard to Abilene's liability for breach of the MPSA.

## II.   Abilene's Counterclaims Against Chisholm

Abilene filed four counterclaims against Chisholm: Count I, breach of contract; Count II, breach of settlement agreement; Count III, breach of fiduciary duty and the implied covenant of good faith and fair dealing; and Count IV, in which Abilene makes a demand for equitable accounting (DNs 48 and 70). We will grant Chisholm's motion for summary judgment (DN 64-1) on each count and we will address each count in turn.

### A.  Counts I & II: Breach of Contract and Breach of Settlement

Under Kentucky law, in order to recover for breach of contract, a plaintiff must show the existence and the breach of a contractually imposed duty. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (*citing Strong v. Louisville & Nashville R.R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931)).

Abilene bases its breach of contract claim on Chisholm's alleged failure to pay Abilene processing fees, processing costs, and other amounts to which Abilene claims it is entitled under

---

[9] We do not agree with Abilene's contention that ruling on the issue of Abilene's breach is improper because "Chisholm has no damages to claim." Thus, Abilene's argument that we should deny summary judgment because Chisholm cannot prove compensable damages fails.

the MPSA (DN 48). Abilene also argues that Chisholm failed to share profits with Abilene even though the MPSA clearly allowed Chisholm to set off any unpaid amount owed by Abilene.

Therefore, because we found that Abilene is liable as a matter of law for breach of the MPSA and that the purchase order is not a settlement agreement, we will grant Chisholm's motion for summary judgment on Counts I and II of Abilene's counterclaims.

### B.  Count III: Breach of Fiduciary Duty & the Covenant of Good Faith

Abilene bases its claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing on Chisholm's alleged improper mark-up of the meat product that it sold to Abilene, and on Chisholm's decision to not extend the MPSA's stated expiration date (DN 48). We will grant Chisholm's motion for summary judgment and address each claim in turn.

### 1.  Abilene's breach of fiduciary duty claim fails.

A fiduciary duty is a higher form of duty to another contracting party than the implied covenant of good faith and fair dealing. *In Re Sallee*, 286 F.3d 878, 891-92 (6th Cir. 2002). A fiduciary relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another, and which also necessarily involves an undertaking in which a duty is created by one person to act primarily for another's benefit in matters connected with such an undertaking." *Quadrille Bus. Sys.*, 242 S.W.3d at 364-65 (*quoting Steelvest Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991)). A fiduciary duty is not created by an "ordinary business relationship or an agreement reached through arm's length transactions" absent factors of mutual knowledge of confidentiality or the undue exercise of power or influence. *Id.* at 365.

The Sixth Circuit's test to show that a fiduciary duty exists requires the plaintiff to show: (1) that the relationship existed before the transaction that is the subject of the action; (2) that

reliance was not merely subjective—the aggrieved party must trust the other party to act as a fiduciary and such trust must be reasonable under the circumstances; and (3) that the nature of the relationship imposed a duty upon the fiduciary to act in the principle's best interest, even if such action were to the detriment of the fiduciary. *In Re Sallee*, 286 F.3d at 891-92.

Here, Abilene has not met the burden of showing that the MPSA created a fiduciary duty owed to it by Chisholm. *See Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.*, 242 F.Supp.2d 438, 448 (W.D. Ky. 2003). Abilene merely contends that it "relied upon Chisholm, with regard to setting the price on the product that was charged . . . to place Abilene's interests ahead of Chisholm's" and that Chisholm breached its duty if it placed its own interests ahead of Abilene's by improperly padding the price (DN 70).

Abilene fails to support any of the requirements of the Sixth Circuit's fiduciary duty test. Abilene does not present evidence that a fiduciary relationship existed before the parties entered the MPSA, nor does it show evidence to support the conclusion that Abilene's reliance on Chisholm was not merely subjective. Abilene also shows no evidence that Chisholm assumed a duty to act in Abilene's best interest. Thus, Abilene has not satisfied the Sixth Circuit's requirements. Also, the undisputed facts indicate that the MPSA did not create a fiduciary duty because it was an arm's-length business transaction in which Chisholm endeavored to recover a debt that Abilene owed. Therefore, we will grant Chisholm's motion for summary judgment on the breach of fiduciary duty claim within Count III.

### 2.   Abilene's breach of the covenant of good faith claim fails.

A covenant of good faith and fair dealing is implied in every contract. *Union Planters Bank, N.A. v. Hutson*, 210 S.W.3d 163, 167 (Ky. Ct. App. 2006). The covenant "imposes upon the parties a duty to do everything necessary to carry out the contract." *Harvest Homebuilders*

-14-

*LLC & Jeter v. Commonwealth Bank & Trust Co.*, 310 S.W.3d 218, 220 (Ky. Ct. App. 2010).

However, the implied covenant does not prevent a party from exercising its contractual rights.

*Farmers Bank & Trust Co. of Georgetown v. Wilhoit Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky.

2005). In other words, under Kentucky law, a "party's acting according to the express terms of a

contract cannot be considered a breach of the duties of good faith and fair dealing." *Hunt Enter.,*

*Inc. v. John Deere Indus. Equip. Co.*, 162 F.3d 1161, *2 (6th Cir. 1998).

Abilene contends that Chisholm breached the implied covenant of good faith and fair

dealing by allowing the MPSA to expire on its natural expiration date when the parties amended

the MPSA four months before the MPSA's expiration date and agreed that Abilene could not

terminate the MPSA until it paid its past-due debt to Chisholm (DN 70). Abilene alleges that

Chisholm's decision not to extend the MPSA was an attempt to force Abilene to purchase the

inventory at ACS, and that Chisholm's "unilateral decision to back out the contract" was a

"seizure of an advantageous business opportunity." (DN 70). Abilene also contends that

Chisholm's mark-up violated the covenant of good faith.

Here, Abilene does not cite case law or other authority to support its argument. Abilene

does not demonstrate that Chisholm failed to do what was "necessary to carry out the contract"

as *Harvest Homebuilders* requires. Also, as we discussed in detail previously, the MPSA did not

prohibit Chisholm from including a mark-up for freight charges, customs costs, and a trader

margin (DN 64-1). Thus, the contract itself evidences that Chisholm's alleged "mark-up" was

permitted.

Abilene does not show that Chisholm's actions were not in accord with the express terms

of the contract to indicate a breach of the covenant of good faith pursuant to *Hunt Enterprises*.

Again, the unambiguous terms of the MPSA allow the price of the meat and other matters

relating to product pricing to be determined by future negotiations and Sell Confirmations (DN 64-1). Accordingly, Abilene's contention that the MPSA obligated Chisholm to sell meat to Abilene's customers without a mark-up ignores the term of the MPSA that provides for market-based meat pricing. The terms of the MPSA do not indicate that Chisholm agreed to sell its meat at a wholesale or base cost as Abilene suggests. Such an interpretation would contravene the purpose of the MPSA, which ensured that Chisholm recouped the debt that Abilene owed.

For the reasons stated above, we will grant Chisholm's motion for summary judgment on the breach of the covenant of good faith and fair dealing claim within Count III.

### C. Count IV: Abilene's Demand for Equitable Accounting

The Supreme Court has held that: "The necessary prerequisites to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law." *Dairy Queen v. Wood*, 369 U.S. 469, 478 (1962); *see also Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972). "[T]he plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Id.* (*citing Kirby v. Lake Shore & M.S.R. Co.*, 120 U.S. 130, 134 (1887)). The Sixth Circuit explains that an accounting is a "species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due to him from another. It is an extraordinary remedy, and unlike other equitable remedies, is available only when legal remedies are inadequate." *Bradshaw*, 454 F.2d at 79.

Under Kentucky law, the plaintiff, Abilene, has the "burden of proving the inadequacy of the legal remedies afforded to them by discovery." *City of Owensboro v. Ky. Util. Co.*, 4:04 CV-87-M, 2008 WL 4542706, *2 (W.D. Ky. Oct. 8, 2008). When a party seeks accounting on the ground that he is unable to determine an amount due where the opponent has the relevant books

and records, "the courts have usually been quick to point out that discovery is available and deny an accounting for that purpose only." *Id.*[10]

The Supreme Court has observed with regard to requesting an accounting that the burden of showing an inadequate remedy at law, is "considerably increased" and "it will indeed be a rare case in which it can be met." *Dairy Queen*, 369 U.S. at 478. The Court further held that "[t]he legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records." *Id.* Based on this holding, the U.S. District Court for the Western District of Kentucky observed that "[a]t least in the federal courts, one may now conclude that the remedy of an accounting no longer exists in cases of complex accounts." *City of Owensboro*, 2008 WL 4542706 at *1.

Here, Abilene does not plead any facts that support its allegation that legal remedies are inadequate or that an equitable accounting is necessary. Abilene does not dispute Chisholm's contention that, through discovery, Abilene has had an opportunity to examine Chisholm's business records. Therefore, we cannot afford Abilene the "extraordinary" remedy of equitable accounting when discovery is available to Abilene to access Chisholm's financial documents. Thus, we will grant Chisholm's motion for summary judgment regarding Count IV.

## III.   Chisholm's Cross Clams Against Abilene

Chisholm filed five cross claims against Abilene: Count I, breach of contract; Count II, breach of fiduciary duty and the implied covenant of good faith and fair dealing; Count III,

---

[10] *City of Owensboro*, 4:04 CV-87-M, 2008 WL 4642435 at *2 cites several foreign cases that this court finds instructive regarding demands for an equitable accounting. For example, in *Centrix HR, LLC v. On-Site Staff Mgmt., Inc.*, 2008 WL 2265266 (E.D. Pa. June 3, 2008), the court held that "[w]here a party had the opportunity to establish their damage claim through discovery, a request for an accounting is not appropriate." Thus, an accounting request is "not a substitute for plaintiffs' obligation to establish their damages through discovery." *Id*. at *12. In *Oil Express Nat'l, Inc. v. Latos*, 966 F.Supp. 650, 652 (N.D. Ill. 1997) the court found that the "need to examine [a party's] business records is not a sufficient justification for an equitable accounting." Similarly, in *Profile Prods., LLC v. Soil Mgmt.Tech., Inc.*, 155 F.Supp.2d 880, 887 (N.D. Ill. 2001), the court found that an equitable accounting is not a substitute for a motion to compel under Fed. R. Civ. P. 37.

unjust enrichment; Count IV, conversion and violation of the Packers and Stockyards Act

("PASA"); and Count V, fraud. Chisholm also claims that an award of punitive damages is

appropriate (DN 45). Abilene requests summary judgment on these claims. (DN 71-1).

We have already addressed Count I—Abilene's breach of the MPSA—and we will deny

summary judgment to Abilene on the issue of breach. We will also deny Abilene's motion for

summary judgment on the remaining claims for the reasons stated herein.

### A.  The Economic Loss Rule Does Not Bar Chisholm's Tort Claims

Abilene's argues that Counts II, IV, & V—Chisholm's tort claims for breach of fiduciary

duty and the covenant of good faith, conversion and a violation of PASA, and fraud—are barred

by the economic loss rule because they are contract-based claims that arise from the MPSA and

have no origin in any "independent duty" outside of the contract.

The Kentucky Supreme Court only recently adopted the economic loss rule in *Giddings*

*& Lewis v. Indus. Risk Insurers*, 348 S.W.3d 729 (Ky. 2011). The *Giddings* court held that the

rule applied narrowly to products liability cases brought under negligence or strict liability

theories and negligent misrepresentation cases—otherwise the "parties' allocation of risk by

contract should control without disturbance by the court." *Id.*; *Brewer Mach. & Conveyer Mfg.*

*Co. v. Old Nat'l Bank*, 248 F.R.D. 478, 481 (W.D. Ky. 2008). The *Giddings* court reserved

ruling on whether the rule applied to bar fraud cases. *Id.* at 732.

Under the economic loss rule, the availability of a contract or tort action is determined by

the source of the duty the plaintiff claims the defendant owed, not merely the label of the cause

of action. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 589-90 (Ky.

2004) (*quoting Town of Alma v. Azco Constr., Inc.*, 10 P.3d. 1256, 1262-64 (Colo. 2000)). "A

breach of contract between the parties must be redressed under contract, and a tort action will not

lie." *Id.* However, if there is "a breach of duty *arising independently* of any contract duties between the parties, [that] may support a tort action." *Id.* Whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court. *Id.* A party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law. *Id.*

Under Kentucky law, a plaintiff must elect whether to proceed in contract or in tort for claims arising from the same factual circumstances. *See Cincinnati N. O. & T. P. Ry. Co. v. Dority*, 166 S.W.2d 996, 996 (Ky. 1942); *see Beaver Dam Coal Co. v. Brashear*, 54 S.W.2d 609, 610 (Ky. 1932). Recent Kentucky case law applied the economic loss rule to bar tort claims that simply mirror claims for breach of contract in order to prevent contract law from "drown[ing] in a sea of tort." *See Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848-49 (6th Cir. 2002) (*quoting E. River S.S. Corp. v. Transamerica Deleval, Inc.*, 476 U.S. 858, 866 (1985)). The economic loss doctrine preserves the distinction between contract and tort law, "[w]here tort law is well-suited to redressing injuries to persons or property, contract law is well-suited to distributing the risk of economic loss." *Id.* at 851.

The failure to perform a contractual obligation typically does not give rise to a cause of action in tort. The narrow exception to this rule is the "independent legal duty" exception. *Mims v. W.S. Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007). "[I]f a plaintiff can establish the existence of an independent legal duty, [then] he may maintain an action in tort even though the acts complained of also constitute breach of contract." *Mims*, 226 S.W.3d at 836 (*quoting Jones v. Hartford Life & Accident Ins. Co.*, 443 F. Supp. 2d 3, 5 (D.C. Cir. 2006)).

Here, Abilene argues that the rule should apply to bar Chisholm's tort claims for breach of fiduciary duty and the covenant of good faith, conversion, a violation of PASA, and fraud.

However, these are not the type of tort claims to which the rule is intended to apply. As we stated above, *Giddings*—along with several recent lower court opinions from the Sixth Circuit—limit the rule's application to claims arising from a defective product sold in a commercial transaction.[11] Thus, applying the rule to bar Chisholm's tort claims, which are not products liability claims, would be improper here. We need not address the application of the independent legal duty exception because we will not apply the economic loss rule. However, if the rule applied here, this exception would preserve Chisholm's tort claims because they are separate and distinct claims from the breach of the MPSA. Thus, we will deny Abilene's motion for summary judgment on Counts II, IV, and V.

### B. Count III: Unjust Enrichment

Unjust enrichment is intended to "prevent one person from keeping money or benefits belonging to another." *Haeberle v. St. Paul Fire & Marine Ins. Co.*, 769 S.W.2d 64, 67 (Ky. Ct. App. 1989). Abilene argues that Chisholm's unjust enrichment claim fails because the claim cannot lie when there is a contract between the parties. *See Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977). However, *Codell* applies to bar unjust enrichment claims only "where there is an explicit contract which has been performed." *Id.*

---

[11] Three district court opinions from the Sixth Circuit, which limit the rule to products liability cases, are persuasive here. In *Rodrock v. Gumz*, 4:11CV-00141-JHM, 2012 WL 1424501 (W.D. Ky. Apr. 24, 2012), the court held that the plaintiff's claims for fraud, negligence, and negligent misrepresentation were not barred by the rule because the application of the rule is limited "to claims arising from a 'defective product sold in a commercial transaction.'" (*citing Giddings*, 348 S.W.3d at 733). Similarly, in *Louisville Gas & Elec. Co. v. Cont'l Field Sys., Inc.*, 420 F. Supp. 2d 764, 769 (W.D. Ky. 2005), the court stated: "Virtually every classic description of the economic loss rule pertains to and often limits its application to the sale of products [in order to] . . . preserve the distinction between the remedies available under the U.C.C. and those available in tort." Last, in *Francis v. Armstrong Coal Reserves*, 4:11-CV-00077-JHM, 2012 WL 777271, *3-4 (W.D. Ky. Mar. 7, 2012), the court again limited the rule's application to products liability cases and also refused to certify the issue of the application of the rule in cases that do not involve products liability claims to the Kentucky Supreme Court.

Here, Abilene breached the MPSA by failing to perform under the contract. Thus, Chisholm's unjust enrichment claim is not barred by *Codell* because Abilene did not perform. Accordingly, we will deny Abilene's motion for summary judgment on Count II of Chisholm's cross claim for unjust enrichment.

A separate order will be entered in accordance with this opinion.

May 20, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**