UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RONALD A. CHISHOLM, LTD.                                          PLAINTIFF

v.                                                        NO. 3:09-CV-00808-CRS

AMERICAN COLD STORAGE, INC.
and AMERICAN COLD STORAGE
NORTH AMERICA, LP                                    DEFENDANTS and THIRD
                                                              PARTY PLAINTIFFS

v.

ABILENE TEXAS FOODS, INC.                           THIRD PARTY DEFENDANT

## MEMORANDUM OPINION

This case is before the court on a motion for summary judgment by the Defendants and Third Party Plaintiffs, American Cold Storage, Inc. and American Cold Storage North America, LP ("ACS"), against the Plaintiff, Ronald A. Chisholm, Ltd. ("Chisholm") (DN 76). ACS's motion contends that summary judgment is proper regarding Chisholm's allegation that ACS released meat products to the Third Party Defendant ("Abilene") without Chisholm's authorization (DN 21).

Chisholm's amended complaint asserts the following against ACS: breach of contract; breach of the fiduciary duty of good faith and of the covenant of good faith; and breach of a contractual bailment (DN 21). In the motion at issue, ACS contends that summary judgment is proper against Chisholm because: (1) Chisholm instructed and authorized ACS to release goods to Abilene via email; (2) ACS is not liable to Chisholm as a bailee pursuant to KRS §§ 355.7-

404; and (3) Chisholm's damages, if any, are limited by the liability provision in ACS's warehouse receipt (DN 76-1).[1]

## BACKGROUND

The following facts are undisputed: this case arose from a series of contractual relationships among three parties: Chisholm, an international meat seller; Abilene, a meat processor and reseller; and ACS, the owner of a cold storage facility that stored both Chisholm's and Abilene's meat products. Beginning in 2007, Abilene contracted to purchase meat products from Chisholm on credit. In early 2008, Abilene stopped making payments and reached its credit limit with Chisholm. Chisholm then stopped shipping meat to Abilene. Thereafter, the parties negotiated to resolve Abilene's arrearage.

### The Master Product Supply Agreement

On August 15, 2008, to allow Chisholm to recoup Abilene's debt, Chisholm and Abilene entered into the Master Product Supply Agreement ("MPSA"). Pursuant to the MPSA, Chisholm would supply meat products to Abilene, which Abilene would process and ship to Chisholm's account at ACS. Abilene would then sell the meat to Abilene's customers and remit the sales proceeds to Chisholm (DN 76-1).[2] It is undisputed that ACS was not a party to the MPSA. With regard to the meat that Abilene processed under the MPSA, ACS merely stored that meat in its cold storage facility (DN 76-1).

---

[1] We need not address the merits of ACS's argument regarding whether or not Chisholm is entitled to double recovery because Chisholm is not seeking double recovery. It is undisputed that Chisholm has recovered part of its damages from Abilene. *See Chisholm v. Am. Cold Storage*, No. 3:09-CV-00808-CRS, 2013 WL 2242648, *6 (May 21, 2013). However, in this case Chisholm does not claim that it is entitled to any amount from ACS that it has already recovered from Abilene (DN 78).

[2] The MPSA specifically required that Chisholm would provide Abilene unprocessed meat, which Abilene would process at its facility. After processing, Abilene would ship the meat to ACS for storage in Chisholm's account, sell the processed meat to Abilene's customers, and remit the profits to Chisholm. Under the MPSA, once Abilene repaid its debt to Chisholm, then Chisholm and Abilene would split the profits on subsequent sales (DN 76-1).

ACS stored Chisholm's products and, in a separate account, also stored Abilene's products. Under the MPSA, Chisholm retained ownership of its meat at ACS at all times until Abilene's customers were invoiced for it. To facilitate Abilene's sales under the MPSA, Chisholm authorized ACS to give Abilene access to Chisholm's inventory. Initially, Abilene was required to have Chisholm review its customer contracts so that Chisholm could approve or reject each contract before authorizing ACS to release any of Chisholm's meat to Abilene. In April and May 2009, after the MPSA's expiration, Chisholm audited its meat inventory and found that meat was missing from its account at ACS. Abilene admits that it removed meat from Chisholm's account at ACS without paying Chisholm for it.[3]

Subsequently, Chisholm and Abilene agreed that Abilene would buy Chisholm's salvaged meat from ACS's facility at an "up charge"[4] to cover part of Abilene's arrears and losses. This agreement was memorialized in a purchase order on September 23, 2009.[5]

### ACS's Warehouse Receipts

When ACS received meat products for Chisholm's account—including the meat that Abilene admits it removed and improperly sold—ACS would issue Chisholm a non-negotiable warehouse receipt and invoice ("warehouse receipt") (DN 76-1). The terms and conditions of the warehouse receipts governed Chisholm's storage account at ACS. The warehouse receipts include a liability provision stating that ACS's liability for lost, damaged or destroyed goods is limited exclusively to: the actual cost of replacing the goods, the fair market value of the goods, 50 times the monthly storage charge for the goods, or $.50 per pound for the goods (DN 76-1).

---

[3] Chisholm's meat inventory audit was disrupted by an ammonia leak at ACS's facility. This leak spoiled a portion of Chisholm's meat inventory. Following the leak, Chisholm agreed to sell Abilene the salvaged meat at an up-charged price in an effort to mitigate Abilene's debt.

[4] The meat at issue in the up-charge arrangement was the salvaged meat at ACS's facility—the meat that was usable after the ammonia leak destroyed part of Chisholm's meat inventory (DN 64-1).

[5] Chisholm asserts that it entered the purchase order with Abilene in an effort to mitigate Abilene's outstanding debt—the amount that Abilene owed Chisholm from Abilene's failure to pay for meat purchased on credit—and to cover the amount Abilene owed from selling Chisholm's meat without remitting the proceeds to Chisholm.

**ACS's Authorization to Release Chisholm's Meat to Abilene**

The meat products at issue here are those that ACS released to Abilene from Chisholm's account (DN 76-1). ACS contends that the warehouse receipts set out its procedure for releasing Chisholm's goods to third-parties.

Initially, pursuant to the MPSA and in accordance with the warehouse receipts, Abilene would send a request via email to both Chisholm and ACS requesting a release of Chisholm's inventory at ACS. Next, if Chisholm approved the release, then it would send ACS written authorization via email instructing ACS to release meat to Abilene.[6]

At the outset, under the MPSA between Chisholm and Abilene—which permitted Abilene to sell Chisholm's meat—Abilene copied both Chisholm and ACS on its requests for release of Chisholm's meat.[7] ACS contends that the authorization process evolved over time, and that the change started when Abilene began requesting releases only from Chisholm and stopped copying ACS its requests. ACS contends that the process changed completely when Chisholm authorized ACS to release its goods upon Abilene's instruction—at which point ACS alleges that Abilene emailed only ACS and no longer copied Chisholm on its requests (DN 76-1).

In other words, ACS depicts Abilene's request process as: (1) initially, Abilene emailed Chisholm a request for release and copied ACS on the request; then (2) Abilene emailed requests only Chisholm and left ACS out of the request process; and finally, (3) when Chisholm instructed ACS to release Chisholm's meat to Abilene upon Abilene's request, then Abilene emailed requests only to ACS and left Chisholm out of the request process (DN 76-1).

---

[6] The primary parties involved with the release requests were:
    a. Jackie Kraay: a Chisholm employee who was authorized to release Chisholm's goods to Abilene;
    b. George Michaels: Chisholm's inventory manager for Abilene's orders;
    c. Cori De La Fuentes: ACS's Office Manager;
    d. Melody Young: ACS's customer representative for both Chisholm's and Abilene's accounts; and
    e. Ryan Ranalli: Abilene's employee.

[7] Abilene (via Ranalli) emailed release request forms to both Chisholm (sent to Kraay) and ACS (sent to Fuente or Young) (DN 76-1).

In response to ACS's motion, Chisholm argues that we should deny summary judgment because (1) Chisholm did not authorize ACS to release meat to Abilene without written approval from Chisholm—that ACS's interpretation of Chisholm's emails is inconsistent with the warehouse receipt's contractual obligations, inconsistent with the context in which the emails occurred, and inconsistent with standard industry practice; (2) ACS is liable under KRS 355.7-204(1) for breaching a bailee's general duty of care; and (3) ACS was the first party to breach the warehouse receipts' obligations, thus the warehouse receipts' liability limitations are not enforceable (DN 78).

For the reasons set forth herein, we see no issue of material fact regarding whether or not Chisholm authorized ACS to release Chisholm's inventory to Abilene.

## STANDARD

Fed. R. Civ. P. 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party moving for summary judgment bears the initial burden of specifying a basis for its motion by demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Not every factual dispute between the parties will prevent summary judgment—the disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). After the moving party meets this burden, the nonmoving party bears the burden of showing "specific facts showing that there is a genuine issue for trial." *Id.* at 248 (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Plaintiffs must offer evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at 322. A "mere scintilla of evidence is insufficient" because there must be evidence on which a jury could find

for the nonmoving party. *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (*quoting Anderson*, 477 U.S. at 252)).

However, the evidence must be construed in the light most favorable to the party opposing the motion. *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962)). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255.

## DISCUSSION

### I. Chisholm Authorized ACS to Release its Meat to Abilene

ACS's motion (DN 76-1) argues that summary judgment against Chisholm is appropriate because ACS properly released Chisholm's meat under the terms of ACS's warehouse receipts, which ACS issued to Chisholm with each meat delivery (DN 76-1). ACS contends that pursuant to Chisholm's instructions via email on September 29 and October 6, 2008, Chisholm authorized ACS to release meat to Abilene upon Abilene's request (DN 76-1).

Chisholm's response argues that we should deny summary judgment because ACS's interpretation of Chisholm's emails is inconsistent with the warehouse receipt's contractual obligations; inconsistent with the context in which the emails occurred; and inconsistent with standard industry practice (DN 78).

### A. Inadmissible Evidence

As a threshold matter, the court will disregard the allegations in Chisholm's response (DN 76-1) that are based on inadmissible evidence. Specifically, Chisholm's response asserts that ACS misinterprets the scope of authorization in the emails Chisholm's logistics coordinator, Jackie Kraay, sent to ACS (DN 78).

ACS argues that the court should disregard Chisholm's allegations about Kraay's intent and two witnesses' interpretations' of Kraay's intent because the testimonial evidence upon which Chisholm relies is inadmissible (DN 84).

The Sixth Circuit has held that "[although] parties may resist a summary judgment motion by presenting evidence not in an admissible form, such as an affidavit, the evidence itself must still be admissible." *N. Am. Specialty Ins. Co v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997). Under Fed. R. Civ. P. 56, a motion for summary judgment requires a party to support the assertion that a fact is undisputed or genuinely disputed by citing parts of the record; it also allows objections when a fact is not supported by admissible evidence. Accordingly, the Sixth Circuit held that inadmissible evidence, such as hearsay evidence, cannot create a genuine issue of material fact. *Id.*; *Wiley v. U.S.*, 20 F.3d 222, 225-26 (6th. Cir. 1994)

Chisholm cites deposition testimony from two witnesses to show that Kraay did not intend her September 29, 2008 email to allow Abilene to request Chisholm's meat without additional authorization (DN 78, ¶ 26).[8] However, the testimony does not support Chisholm's argument and runs afoul of Fed. R. Civ. P 56(c)(1) and (2) because Fed. R. Evid. 602 requires laying a foundation that a witness has personal knowledge of the facts about which she testifies.[9]

Chisholm's statement about Kraay's intent—as it relates to Chisholm's context argument—is not admissible for purposes of summary judgment under Fed. R. Civ. P. 56. Here, contrary to Chisholm's allegations, ACS's Melody Young testified that she was not copied on Kraay's September 29, 2008 email to Abilene and that she had not seen the email before her deposition. Similarly, Abilene's Karen Nicholson testified that she never saw Kraay's September

---

[8] Chisholm specifically asserts that "Ms. Kraay's email was not intended to be an authorization for ACS to release Chisholm's inventory from its storage account at ACS's facilities to [Abilene]. The e-mail was only intended to grant [Abilene's] request for access to information regarding Chisholm's inventory in ACS's storage facilities." (DN 78, ¶ 26).
[9] Under Fed. R. Evid. 602, " [A] witness may testify to a matter only if the evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter."

29th email and, contrary to Chisholm's assertion, that she believed Abilene had express authorization from Chisholm for each release of Chisholm's meat.

In sum, neither Young nor Nicholson received Kraay's email of 8:31 AM September 29th, knew of its contents, or had personal knowledge of Kraay's intent (DN 84, Ex. 1, Nicholson dep. at 86:1-11; Ex. 2 Young dep. at 52:6-53:14). Therefore, the court will disregard Chisholm's assertion that "Ms. Kraay's email was not intended to be an authorization for ACS to release Chisholm's inventory from its storage account at ACS's facilities to [Abilene]. The e-mail was only intended to grant [Abilene's] request for access to information regarding Chisholm's inventory in ACS's storage facilities." (DN 78, ¶ 26).

Similarly, the court will disregard Chisholm's assertion that "[Abilene] did not construe [Kraay's October 6, 2008 email] to be such an authorization [for the release of Chisholm's actual inventory from storage]." (DN 78, ¶ 29). Again, Chisholm cites Abilene's Karen Nicholson's deposition for support. However, Nicholson testified that she believed Abilene had authorization for every release of Chisholm's goods and that she never received Kraay's October 6, 2008 email (DN 84-1). Thus, Chisholm's statement is inadmissible under Fed. R. Civ. P. 56 and the court will disregard Chisholm's assertion that Abilene interpreted Chisholm's authorization to be limited in scope.

In sum, we will not consider Chisholm's proffered inadmissible evidence in its response to ACS's motion for summary judgment. Fed. R. Civ. P. 56; *see Wiley*, 20 F.3d at 226.

**B. Chisholm's Emails were Authorization Pursuant to the Warehouse Receipts**

It is undisputed that ACS's warehouse receipts addressed releasing products to third-parties. ACS supplied warehouse receipts to Chisholm, and the procedure for authorization and

transfer of meat from Chisholm's account to Abilene developed through the course of dealing between the parties (DN 76-1).

ACS argues that it released Chisholm's goods to Abilene pursuant to both Chisholm's instructions and the terms of the warehouse receipts. Section 7 of ACS's warehouse receipt states (DN 76-1, Ex. 9):

> SECTION 7 – TRANSFER OF TITLE; DELIVERY
> COMPANY [ACS] reserves the right not to deliver or transfer GOODS to or for the account of others except upon written receipt instructions properly signed by the STORER [Chisholm].[10]

Chisholm sent ACS two emails which Chisholm argues authorize ACS to give Abilene access to Chisholm's inventory:

First, a September 29, 2008 email from Kraay at Chisholm to Fuente at ACS (DN 76, Ex. 16):

> From: Jackie Kraay [Chisholm]
> To: Shannon McCune [ACS]; Cori De La Fuente [ACS]
>
> Abilene TX Foods is allowed to have access to Chisholm's inventory and paperwork until further notice. If you have any questions, please contact me, otherwise, please forward the paperwork to Ryan [at Abilene] when requested.

Second, an October 6, 2008 email from Kraay to Fuente (DN 76, Ex. 17):

> From: Jackie Kraay [Chisholm]
> To: Cori De La Fuente [ACS]
>
> Confirming that I [Chisholm] gave authorization for Abilene to have access to our inventory, INCLUDING warehouse receipts and withdrawal notices.

ACS contends that these emails are written authorization to release Chisholm's goods pursuant to the warehouse receipts. Chisholm, however, argues that the September 29th and

---

[10] We will not address the first sentence of Section 7(a), which states: "Instructions by STORER [Chisholm] to transfer GOODS to the account of another are not effective until delivered to and accepted by COMPANY [ACS]." This sentence is not applicable here because the undisputed facts show that Abilene's requests were for the delivery of Chisholm's goods after Abilene sold the goods—the requests were not for the transfer of goods to the account of another already in storage at ACS. Thus, we will only address the applicable part of Section 7(a) (DN 76-9).

October 6th emails are not authorization when they are read in context with a thread of emails between the parties that began on September 25 and ended on October 6, 2008 (DN 78).

Chisholm argues that when its September 29th and October 6th emails to ACS are placed in context with other emails it is clear that the two emails ACS claims support its authorization arguments were, in fact, not intended to authorize ACS to release meat to Abilene. Chisholm contends that its emails were intended to authorize ACS to release only information about Chisholm's inventory and to allow Abilene to access information about Chisholm's storage account on ACS's computer system (DN 78).

As a threshold matter, it is undisputed that neither Kraay at Chisholm, Fuente at ACS, or any other parties discussed the extent of the authorization in the October 6th email to clarify any perceived ambiguity.

Here, Section 7(a) of the warehouse receipt states that ACS "reserves the right" to require written instructions signed by Chisholm. The undisputed facts show that ACS complied with the receipts' requirement and relied on Chisholm's instructions to release goods to Abilene. Moreover, Chisholm does not identify facts to support any argument to the contrary. Also, after reviewing the two emails ACS offers as proof of authorization, we view the language as unambiguous. Both emails, on their face, authorize ACS to release Chisholm's meat to Abilene.

When a motion for summary judgment is presented, the facts, and all inferences that can be drawn from them, must be construed in favor of the party who opposes the motion. *Matsushida,* 475 U.S. at 587. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Id.* (*citing* Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Id.* (*quoting Cities Serv.*, 391 U.S. at 289)). Regarding

supporting documentation, such as the emails here, the Sixth Circuit stated that "the movant's papers are to be closely scrutinized [and] those of the opponent are to be viewed indulgently." *Childs v. Pellegrin,* (822 F.2d 1382, 1387) (*quoting Smith v. Hudson*, 600 F.2d 60, 63-64, *cert. dismissed,* 444 U.S. 986)). Here, even viewing the emails offered by Chisholm "indulgently," we do not see a genuine issue for trial.

Chisholm's context argument is weak because it does not show context through the emails or the witnesses' testimony. As we read it, Chisholm's instruction is unambiguous—its email states that Chisholm "gave authorization for Abilene to have access to our inventory, INCLUDING warehouse receipts and withdrawal notices." (DN 76, Ex. 17). Fuente's deposition testimony also supports this reading because she indicated that she understood Chisholm's emails to be authorization for ACS to release Chisholm's goods pursuant to Abilene's instructions—she did not read ambiguity into the email (DNs 76-14 and DN 62-6).

Second, Chisholm does not support its contention that ACS ever received any other emails—Chisholm does not show that ACS received the emails sent between September 25 and October 6, 2008—to create the context for an alternate interpretation. In fact, contrary to Chisholm's argument, Fuente testified that she did not receive the emails Chisholm cited (DN 84-4). Also, after reviewing the email threads at issue, neither the face of the emails nor the testimonial evidence indicates that Fuente, or anyone else at ACS, received the emails that support Chisholm's context argument.

Third, we do not agree with Chisholm's assertion that a 9:28 AM October 6th email from Abilene to Chisholm establishes context (DN 84-5):

From: Nicholson [Abilene]
To: Jackie Kraay [Chisholm]; CC: Gavin Hoey & George Michaels [Chisholm]

> The online access to account information has been set up at [ACS through Via View]. [Abilene has] access to view the inventory but that is it. Can you please authorize access to view and print warehouse receipts and withdrawals, this is more important than viewing the inventory. It takes from 24 hours to never to get this information faxed to us from [ACS].

Not only does Chisholm fail to show that ACS received this 9:28 AM email, but Chisholm also sent ACS an email that appears to be a blanket authorization minutes later, at 9:35 AM October 6th, (DN 84-5):

> From: Jackie Kraay [Chisholm]
> To: Cori De La Fuente [ACS]
>
> Cori
> Confirming that I gave authorization for Abilene to have access to our inventory, INCLUDING warehouse receipts and withdrawal notices.

This 9:35 AM email does not instruct ACS to give Abilene limited access to only information regarding Chisholm's inventory. Thus, we agree with ACS that the 9:35 AM email, which neither party disputes that Fuente received, illustrates Chisholm's authorization for Abilene to access Chisholm's inventory. We view the October 6th email as blanket authorization for ACS to release Chisholm's product

For the purpose of argument, even if we read the email in light of the prior email, we cannot rewrite the plain language of the 9:35 AM email. The 9:28 AM email indicates that Abilene only had limited authority to request the release of Chisholm's goods and view Chisholm's inventory through the online Via View system at 9:28 AM, but the 9:35 AM email granted Abilene additional control. Thus, even reading the 9:35 AM email in context supports ACS's contention that Chisholm authorized Abilene's access to its inventory.[11]

---

[11] Similarly, in an 8:20 AM September 29, 2008 email sent from Abilene to Chisholm—Abilene asks Chisholm for permission "to get copies of the paperwork for Chisholm so [Abilene will not] have to go through this every time [Abilene] need[s] an inventory or withdrawal paperwork [from ACS.]" (DN 84-5) Chisholm contends that this email provides context by showing that ACS should have read later emails as limited authorization, not blanket authorization. However, Chisholm does not support such an argument. In fact, the next email in the thread—from Chisholm to ACS at 8:31 AM—is not marked as a follow-up email, does not reference or indicate whether or not the

Chisholm's context argument is also weakened because Fuente's testimony shows that she differentiated between authorizations to release documents related to inventory and authorizations to release the actual inventory itself. Fuente testified that the September 25, 2008 email from Chisholm at 10:12 AM, which states: "Please give Abilene a copy of Chisholm's inventory" was an authorization to release documentation. She testified that the email did not refer to releasing the actual inventory itself, but that it told her to "give [Abilene] a copy of Chisholm's inventory." (DN 84-4). Fuente distinguishes authorization to release actual inventory from authorization to release documents like the September 25, 2008 email (DN 62-6). Fuente stated: "When I get paperwork and I see something in writing that tells me to release inventory on paperwork . . . I'm going to take it at face value." However, if an email "tells me to release inventory . . . as long as you tell me to release it I'm going to release it." (DN 62-6).[12]

We will not address the merits of Chisholm's allegation that ACS did not comply with industry standards because Chisholm does not show that ACS violated the warehouse receipts' protocol, nor has Chisholm alleged that the industry practice differs from ACS's.

## II.   ACS Delivered the Goods with Due Care under KRS §§ 355.7-404–.7-204

ACS contends that it is also entitled to summary judgment because it delivered Chisholm's goods to Abilene in good faith under KRS 355.7-404, which provides that bailees are not liable for good faith deliveries pursuant to receipt or bill of lading:

---

8:20 AM email was copied or attached, and which Chisholm does not allege was received by ACS—states: "Abilene TX Foods is allowed access to Chisholm's inventory and paperwork until further notice." (DN 84-5). ACS's alleged receipt of other emails is not a disputed fact because Fuente at ACS testified that she received the 8:34 AM email from Chisholm, but did not see the 8:20 AM email until her deposition, and also because Chisholm does not contend that ACS received the earlier emails. Even if we assume that ACS received the 8:20 AM email, the October 6th emails, discussed previously, show that Chisholm authorized Abilene to access its actual inventory. In sum, without a showing that ACS had knowledge of the other emails, Chisholm's context argument fails.

[12] Chisholm's allegation that the emails were ambiguous is weak, especially in light of Fuente's testimony when she was questioned about why she did not clarify the scope of Chisholm's authorization to release meat to Abilene. Fuente stated that if her "[point of contact at Chisholm] tells me to release inventory and paperwork, I'm going to release inventory and paperwork. I'm assuming that [Chisholm's employee] knows what she is doing, otherwise R.A. Chisholm would not have hired her." (DN 62-6).

> A bailee that in good faith including observance of reasonable commercial standards has received goods and delivered or otherwise disposed of them according to the terms of a document of title or pursuant to this article is not liable therefore. This rule applies even though the person from whom he received the goods had no authority to procure the document or to dispose of the goods and even though the person to whom he delivered the goods had no authority to receive them.[13]

Ky. Rev. Stat. Ann. § 355.7-404 (West)

The good faith delivery statute operates in tandem with the duty of reasonable care statute, KRS § 355.7-204(1). As such, ACS's obligation to deliver goods as a bailee[14] is subject to a general duty of care with regard to its bailment of Chisholm's property. Under KRS § 355.7-204:

> A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. However, unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care.

Ky. Rev. Stat. Ann. § 355.7-204 (West)

Kentucky courts have held that once a bailor makes a prima facie case of negligence—by showing that he delivered the goods and the bailee failed to return them according to the bailment contract—the burden is then on the bailee to produce evidence that tends to show the loss was not a result of his negligence. *See D.H. Overmyer Co. v. Hirsch Bros. & Co.*, 459 S.W.2d 598, 598-601 (Ky. Ct. App. 1970); *see Webb v. McDaniels*, 205 S.W.2d 511, 513 (Ky. Ct. App. 1947). Here, ACS met its burden by showing that it was not negligent in releasing Chisholm's meat because it released meat pursuant to Chisholm's instructions and in accordance with the storage agreement in the warehouse receipts (DN 76-1).

---

[13] Amendments to KRS § 355.7-404 took effect in July 12, 2012; however, the amendments are not retroactive. Thus, the previous version of the statute applies here. *See* Ky. Rev. Stat. Ann. §§ 355.7-404, .7-703 (West).

[14] Pursuant to KRS § 355.7-102(1)(a), ACS is a bailee: a person that "by a warehouse receipt . . . or other document of title acknowledges possession of goods and contracts to deliver them." Ky. Rev. Stat. Ann. § 355.7-102(1)(a) (West).

Chisholm argues that *Webb*, an exception to the general rule, controls here because ACS did not follow its instructions and breached the implied instruction in the warehouse receipts—the implied instruction being that ACS would not release Chisholm's property to a third party without Chisholm's consent and authorization. *See Webb,* 205 S.W.2d at 513. Under *Webb*, when a bailee fails to follow the bailor's instructions, expressed or implied, and "the property is lost, destroyed, or put beyond the bailee's power to return, then the bailee is liable irrespective of negligence on his part." *Id*. Here, we will not apply *Webb* because ACS did not deal with Chisholm's property in an unauthorized manner. In this case, Chisholm told ACS that "Abilene TX Foods is allowed to have access to Chisholm's inventory and paperwork until further notice" on September 25, 2008. Chisholm then further clarified the authorization by "[c]onfirming authorization for Abilene to have access to our inventory, INCLUDING warehouse receipts and withdrawal notices" via email on October 6th (DN 84-5).

Thus, ACS is not liable for Chisholm's property under the above-mentioned statutes because ACS has met its burden to show that the loss did not result from its negligence.[15]

### III. Chisholm's Damages are Limited by the Warehouse Receipts

In a related case, this court found that Chisholm had a duty to mitigate the damages that arose from Abilene's breach of the MPSA, *Chisholm v. Am. Cold Storage*, No. 3:09-CV-00808-CRS, 2013 WL 2242648, *6 (May 21, 2013) ("*Chisholm I*"), because the Sixth Circuit follows the mitigation doctrine in breach of contract cases. *Katch v. Speidel, Div. of Textron, Inc.*, 746 F.2d 1136, 1140 (6th Cir. 1984). Thus, we held that Chisholm was permitted to recover damages from Abilene for Abilene's breach. *Chisholm I,* 2013 WL at *6.

---

[15] Because ACS is not liable under the statutes we need not address ACS's argument regarding the application of *contra preferendum,* as described in *McMullin v. McMullin*, 338 S.W.3d 315, 322, 2001 WL 1515608 (Ky. Ct. App. 2011) ("[T]he rule of *contra preferendum*, is a maxim of contract interpretation that ambiguities will be construed against the drafter of a contract when the contract is susceptible to two meanings.") (DN 84).

In the motion at issue here, ACS argues that because Chisholm is permitted to recover—and has already recovered partial damages from Abilene—that Chisholm is barred from seeking damages from ACS (DN 76-1). We do not agree that Chisholm is barred from seeking damages from ACS solely because Abilene is liable to Chisholm.

In *Chisholm I,* 2013 WL 2242648 at *6, we discussed Abilene's liability for the debt it owed Chisholm for failing to pay for the meat products Abilene improperly sold. Although we held that Abilene was liable for damages, we did not address the amount of damages, if any, that Abilene owed Chisholm. Our ruling was limited to the issue of Abilene's breach of contract. *Id.*[16]

Here, we will again limit our ruling to the issue of ACS's liability and we will not address the amount of damages, if any, that ACS owes because the amount of Chisholm's damages is still a disputed fact (DN 84).[17]

Pursuant to the contractual agreement in the warehouse receipts, if ACS is found liable to Chisholm then Chisholm may recover only those damages from ACS allowable under the terms of the warehouse receipts. In other words, in the event that ACS is liable for Chisholm's damages, then the warehouse receipts' liability provision limit the amount of those damages.[18]

---

[16] At the time of our ruling, it was undisputed that Abilene had paid Chisholm between $3.7-3.9 million of the approximately $4 million that Abilene owed under the purchase order between Abilene and Chisholm. *Id.*

[17] We will not address the merits of ACS's claim that Chisholm ratified Abilene's improper sales via the purchase order. Ratification is not presumed, and the party who alleges it has the burden of proving its existence. *Fulton Cnty. Fiscal Ct. v. S. Bell Tel. & Tel. Co.*, 158 S.W.2d 437, 429 (Ky., 1942). A ratification only exists if there is evidence that the opposing party intended to ratify another's prior bad acts; moreover, a ratification cannot be inferred from acts which may be readily explained without involving intent to ratify. *Wolford v. Scott Nickels Bus Co.*, 257 S.W.2d 594, 596 (Ky. 1953); *see Edwards v. Ky. Util. Co.,* 158 S.W.2d 935, 936 (Ky. 1942). Here, Chisholm's effort to mitigate Abilene's damages does not demonstrate its intent to ratify. Also, ACS's reliance on *Hardaway Management. Co. v. Southerland,* 977 S.W.2d 910, 918 (Ky. 1998) for the proposition that ACS is not liable to Chisholm is misplaced. While *Hardaway* states that "[t]here is a strong public policy in this commonwealth against double recovery for the same elements of loss," the case addressed double recovery in the context of a judgment regarding workers compensation benefits and we find the dicta unpersuasive here. *Id.*

[18] We will not address the merits of Chisholm's argument that ACS cannot enforce the warehouse receipts' liability provision because ACS breached the receipts' contractual terms first. *See Williamson v. Ingram*, 49 S.W.2d 1005, 1006 (Ky. 1932) (holding that "a party who commits the first breach of contract is deprived of the right to complain of a subsequent breach by the other party."); *see also Amalgamated Indus., Ltd. v. Tressa, Inc.*, 69 Fed. App'x 255, 259 (6th Cir. 2003) (same). Here, as we discussed previously, Chisholm sent ACS written authorization to release

Under KRS § 355.7-204(2), the warehouse receipts' liability provision is permitted because warehouse operators may contractually limit their liability in a warehouse receipt. Ky. Stat. Ann. § 355.7-204(2) (West). Here, Section 9(d) of the Contract Terms and Conditions of the warehouse receipts states that ACS's liability for lost, damaged or destroyed goods is limited exclusively to: (1) the actual cost of replacing the goods; (2) the fair market value of the goods; (3) 50 times the monthly storage charge for the goods; or (4) $.50 per pound for the goods (DN 76-1).[19]

Under the statute, this provision is enforceable because limitation of liability provisions are enforceable in all instances except where the warehouseman converts the goods to its own use. Ky. Stat. Ann. § 355.7-204(2) (West).[20] Therefore, to the extent that ACS may be liable to

---

Chisholm's meat to Abilene. Thus, ACS did not breach section 7 of the warehouse receipts, which require written authorization. As such, Chisholm's argument that ACS breached the contract first is inapplicable here.

[19] The full text of Section 9(d) states (DN 76-1):
> IN THE EVENT OF LOSS, DAMAGE OR DESTRUCTION TO GOODS FOR WHICH THE COMPANY IS LEGALLY LIABLE, STORER DECLARES THAT [ACS'S] LIABILITY SHALL BE LIMITED TO THE LESSER OF THE FOLLOWING:
> (1) THE ACTUAL COST TO STORER OF REPLACING, OR REPRODUCING THE LOST, DAMAGED, AND/OR DESTROYED GOODS TOGETHER WITH TRANSPORTATION COSTS TO WAREHOUSE, (2) THE FAIR MARKET VALUE OF THE LOST, DAMAGED, AND/OR DESTROYED GOODS ON THE DATE STORER IS NOTIFIED OF LOSS, DAMAGE AND/OR DESTRUCTION, (3) 50 TIMES THE MONTHLY STORAGE CHARGE APPLICABLE TO SUCH LOST, DAMAGED AND/OR DESTROYED GOODS, (4) $0.50 PER POUND FOR SAID LOST, DAMAGED, AND/OR DESTROYED GOODS.
> PROVIDED, HOWEVER THAT WITHIN A REASONABLE TIME AFTER RECEIPT OF THIS WAREHOUSE RECEIPT, STORER MAY, UPON WRITTEN REQUEST INCREASE COMPANY'S LIABILITY ON PART OR ALL OF THE GOODS IN WHICH CASE AN INCREASED CHARGE WILL BE MADE BASED UPON SUCH INCREASED VALUATION; FURTHER PROVIDED THAT NO SUCH REQUEST SHALL BE VALID UNLESS MADE BEFORE LOSS, DAMAGE OR DESTRUCTION TO ANY PORTION OF THE GOODS HAS OCCURRED.

[20] We need not address the application of KRS § 355.7-204(1) regarding the ACS's exercise of due care, as we addressed it earlier in this opinion. Also, the full text of section (2) states:
> Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage beyond which the warehouse is not liable. Such a limitation is not effective with respect to the warehouse's liability for conversion to its own use. The warehouse's liability, on request of the bailor in a record at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt, may be increased on part or all of the goods covered by the storage agreement or the warehouse receipt. In this event, increased rates may be charged based on an increased valuation of the goods.

Ky. Rev. Stat. Ann. § 355.7-204 (West).

Chisholm, ACS's maximum liability should be limited in accordance with Section 9(d) of the warehouse receipts.[21]

In sum, we will grant summary judgment for ACS because there is "no genuine need for a jury trial" where no "reasonable jury" could return a verdict in favor of Chisholm regarding (1) whether ACS released Chisholm's goods pursuant to the Chisholm's instructions; (2) whether ACS delivered the goods with due care under KRS §§ 355.7-404–.7-204; and (3) that if ACS is liable to Chisholm, whether its damages are limited by the warehouse receipts. *See Anderson*, 477 U.S. at 248.

A separate order will be entered in accordance with this opinion.

July 30, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[21] We find ACS's argument that issue preclusion bars relitigation of the enforceability of the liability limitation provision in the warehouse receipts persuasive. In a separate case brought by Chisholm against ACS regarding the ammonia spill at ACS's facility, this court found that the liability limitation provision in the warehouse receipts was valid and enforceable. *Ronald A. Chisholm Ltd .v. Am. Cold Storage Inc., & Am. Cold Storage N. Am. LP*, 3:10-cv-57-CRS (W.D. Ky. Mar. 30, 2012). We need not address the merits of this argument because the liability provision is enforceable under the statute.