UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RONALD A. CHISHOLM, LTD.                                    PLAINTIFF

v.                                                          NO. 3:09-CV-00808-CRS

AMERICAN COLD STORAGE, INC.
and AMERICAN COLD STORAGE
NORTH AMERICA, LP                                           DEFENDANTS and THIRD
                                                            PARTY PLAINTIFFS

v.

ABILENE TEXAS FOODS, INC.                                   THIRD PARTY DEFENDANT

## MEMORANDUM OPINION

This case is before the court on a motion for summary judgment by the Defendants and Third Party Plaintiffs, American Cold Storage, Inc. and American Cold Storage North America, LP ("ACS"), against the Third Party Defendant, Abilene Texas Foods, Inc. ("Abilene") (DN 77). ACS requests that the court enter summary judgment in favor of ACS for indemnification from Abilene because Abilene's acts exposed ACS to liability (DN 29).

The Plaintiff, Ronald A. Chisholm, Ltd. ("Chisholm"), asserted the following against ACS: breach of contract; breach of the fiduciary duty of good faith and of the covenant of good faith; and breach of a contractual bailment (DN 21). ACS then filed a third-party complaint against Abilene seeking indemnity against Abilene if the event that is found liable to Chisholm.

## BACKGROUND

In October 2009, Chisholm commenced an action against ACS alleging ACS released Chisholm's meat products to Abilene without permission (DN 58-1).[1] In August 2010, ACS filed a third-party complaint against Abilene seeking indemnification from Abilene based on the theory that if Chisholm sustained damages due to the unauthorized release of its meat products, the damages were created by the acts or omissions of Abilene, or in the alternative, Abilene requested contribution commensurate with Abilene's degree of fault in causing Chisholm's damages (DN 77).

In the motion at issue, ACS contends that Abilene requested the release of Chisholm's meat from ACS without Chisholm's permission.[2] ACS claims that Abilene was neither authorized to issue a delivery order to ACS, nor was Abilene authorized to accept delivery because Abilene did not have Chisholm's authorization to do so (DN 85). ACS argues that Chisholm's claims against it are, in whole or in part, tort claims and that therefore its indemnity and contribution claims against Abilene are proper (DN 85).

Abilene's response argues that ACS's claims for indemnity and contribution are not legally maintainable. This raises the question of whether Chisholm's claims against ACS sound in tort—which would allow ACS to claim indemnity and contribution against Abilene, or whether Chisholm's claims sound in contract—such that indemnity and contribution are improper. Abilene argues that because Chisholm's underlying claims against ACS are based in contract, contribution and indemnity claims against Abilene are not available. Abilene also argues that ACS cannot assert a claim for contribution for Abilene's proportionate share of fault

---

[1] We will not restate the lengthy facts of this case, as we have outlined them in full in several related opinions.
[2] We will not address ACS's argument that "[e]quity requires Abilene to indemnify ACS" because ACS does not cite any authority for its argument (DN 77-1).

if ACS is held liable for Chisholm's damages because Kentucky courts abrogated contribution actions in favor of comparative fault through apportionment (DN 79).

## STANDARD

Fed. R. Civ. P. 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party moving for summary judgment bears the initial burden of specifying a basis for its motion by demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Not every factual dispute between the parties will prevent summary judgment—the disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). After the moving party meets this burden, the nonmoving party bears the burden of showing "specific facts showing that there is a genuine issue for trial." *Id.* at 248 (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Plaintiffs must offer evidence demonstrating a genuine issue of material fact. *Celotex*, 477 U.S. at 322. A "mere scintilla of evidence is insufficient" because there must be evidence on which a jury could find for the nonmoving party. *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (*quoting Anderson*, 477 U.S. at 252)).

However, the evidence must be construed in the light most favorable to the party opposing the motion. *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962)). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255.

# DISCUSSION

## I.   Chisholm's Underlying Claims Against ACS are Contract-Based

In Kentucky, claims for indemnity and contribution arise only if a party identifies a viable underlying tort claim. *See Ohio River Pipeline Corp. v. Landrum*, 580 S.W.2d 713, 719-720 (Ky. Ct. App. 1979) (*citing V.V. Cooke Chevrolet, Inc. v. Metro. Trust Co.*, 451 S.W.2d 428, 420 (Ky. 1970)). Indemnity and contribution are separate and distinct and apply to different fact situations. *Id.*; *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 779 (Ky. 2000).

Kentucky law now obviates claims for contribution among joint tort feasors in favor of apportionment. *See* Ky. Rev. Stat. Ann § 411.182 (West). Contribution "distributes the loss among the tort feasors by requiring each to pay a share of the injured party's loss." *Ohio River Pipeline Corp.*, 580 S.W.2d at 719-720. Like contribution, "apportionment is concerned with the distribution of loss among joint tort-feasors." *Id.* at 719. Accordingly, even though there is no cause of action for contribution in Kentucky, we will analyze ACS's claim as if it were one for apportionment. *See* Ky. Rev. Stat. Ann § 411.182 (West).

Similarly, common law indemnity is "shifting the entire loss from one tort feasor who has been compelled to pay it to the shoulders of another who should bear it instead." *Ohio River Pipeline Corp.*, 580 S.W.2d at 719. In other words, in the absence of a contractual indemnity obligation, a party may be entitled to indemnity if its liability is the result of a wrongful act of a tort feasor. *Celina Mut. Ins. Co. v. Harbor Inc. Agency, LLC*, 332 S.W.3d 107, 113-14. Thus, common law indemnity would also require ACS to identify a viable underlying tort claim.

Under Kentucky law, the failure to perform a contractual obligation typically does not give rise to a cause of action in tort. There is a narrow exception to this rule, the "independent legal duty" exception. *Mims v. W.S. Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007).

"[I]f a plaintiff can establish the existence of an independent legal duty, [then] he may maintain an action in tort even though the acts complained of also constitute breach of contract." *Mims*, 226 S.W.3d at 836 (*quoting Jones v. Hartford Life & Accident Ins. Co.*, 443 F. Supp. 2d 3, 5 (D.C. Cir. 2006)).

Here, the labels Chisholm applied to the claims in its amended complaint do not determine the nature of Chisholm's causes of action. *See Minger v. Green*, 239 F.3d. 793, 799 (6th. Cir. 1955). Abilene argues that the nature of Chisholm's claims do not establish that ACS owed any independent legal duties to Chisholm outside the scope of their contract that would trigger the exception to allow a claim to be brought in tort (DN 79). In other words, Abilene argues that Kentucky law does not permit shifting ACS's contractual liability through indemnity, contribution, or apportionment because each of Chisholm's claims are expressly premised on the contract between Chisholm and ACS, and ACS does not identify any independent duty to support a tort claim (DN 79).

ACS's reply argues that the breach of fiduciary duty and breach of contractual bailment claims are tort or quasi-tort actions under the economic loss rule, and that the breach of contract claim is a tort action under the independent duty exception—based on Chisholm's allegation that ACS failed to exercise "reasonable care" with respect to releasing Chisholm's meat products in its Amended Complaint (DN 85). ACS also argues that Chisholm's breach of contract claim is a tort claim because Chisholm's damages were the result of Abilene's tortious conduct—that Abilene caused Chisholm's damages because Abilene requested the release Chisholm's meat products and then failed to pay Chisholm for the products it sold. (DN 85).

## I. The Breach of Contract Claim is Contract-Based

Here, the breach of fiduciary duty claim arose from ACS's alleged failure to perform under the contract and ACS does not establish that any other independent legal duty exists. *See Chisholm v. Am. Cold Storage, Inc.*, No. 3:09-CV-00808-CRS-JDM, 2012 WL 5362306 (Oct. 31, 2012). Chisholm's pleadings indicate that ACS's duty was articulated in the contract. Any fiduciary duty ACS owed to Chisholm was wholly contractual—not based on an independent duty (DN 21).

Chisholm's amended complaint indicates that the basis of ACS's alleged fiduciary duty was contractual. Chisholm alleges that "[b]y and through the parties' contract for cold storage services, ACS assumed a fiduciary duty to Chisholm with regard to the receipt, storage, and delivery of Chisholm's property," and that ACS committed a "material breach of the fiduciary duty that they owe to Chisholm pursuant to the parties' contract for cold storage services." (DN 21). Here, ACS fails to identify any independent legal duty outside the scope of the contract to trigger the independent duty exception. Therefore, ACS's argument that a breach of fiduciary duty claim is necessarily tort-based fails here.

## II. The Economic Loss Rule

ACS's reply argues that Chisholm's claims for breach of fiduciary duty and for breach of contractual bailment are tort or quasi-tort actions under the economic loss rule. The Kentucky Supreme Court only recently adopted the economic loss rule in *Giddings & Lewis v. Industrial Risk Insurers*, 348 S.W.3d 729 (Ky. 2011). Under the economic loss rule, the availability of a contract or tort action is determined by the source of the duty the plaintiff claims the defendant owed, not merely the label of the cause of action:

> [a] breach of contract between the parties must be redressed under contract, and a tort action will not lie. [However, if there is a] breach of duty *arising*

> *independently* of any contract duties between the parties, [that] may support a tort action. . . . The question of whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court. . . . [a] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.

*Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 589-90 (Ky. 2004) (*quoting Town of Alma v. Azco Constr., Inc.*, 10 P.3d. 1256, 1262-64 (Colo. 2000)).

### A. The Breach of Contract and Fiduciary Duty Claims are Contract-Based

ACS contends that the breach of contract claim is a tort action under the economic loss rule because Chisholm's amended complaint alleges that ACS failed to exercise "reasonable care" with respect to releasing Chisholm's meat products (DN 85). ACS also contends that Chisholm's breach of contract claim is a tort claim because Chisholm's damages were the result of Abilene's tortious conduct (DN 85).

ACS's economic loss argument for the breach of fiduciary duty claim fails. ACS argues that Chisholm's breach of fiduciary duty claim is a tort claim because "some torts are expressly designed to remedy purely economic loss (e.g., professional negligence, fraud, and breach of fiduciary duty)." *Presnell,* 134 S.W.3d at 589. However, ACS's allegation is based on a parenthetical reference in *Presnell* and an incomplete analysis of the case.[3] Under *Presnell*, for a breach of a contractual duty to support a tort claim, the breach must "arise independently" from the contract, which is not true of the breach in this case. *Id.* at 589-90. Therefore, the breach of fiduciary duty claim between Chisholm and ACS is purely a matter of contract law.

### B. The Breach of Bailment Claim is Contract-Based

A bailment claim may be brought as a tort cause of action under some circumstances—such as when there is no bailment contract, or when a duty exists independent of the contract.

---

[3] ACS does not argue that the breach of fiduciary duty claim arose from any relationship other than that created by the contract between Chisholm and ACS.

Here, however, the bailment claim arose out of a contract for bailment between Chisholm and ACS. Chisholm's amended complaint alleges that "[t]he contract for cold storage services between Chisholm and ACS is a contract for bailment. By and through the contract, [ACS] accepted Chisholm's property as a bailee for hire." (DN 21).

Under Kentucky law, although a bailment agreement contains contractual elements, the breach of a contractual bailment may be a tort cause of action.

> [T]he bailee must exercise ordinary care and diligence in safeguarding the property and is liable for injury to, or loss of, the property resulting from his failure to do so, but is not liable for the injury or loss of the property not resulting from negligence on his part, or that of his agents or employees. . . . [However] most actions for lost profits are based on breaches of contractual duties while most actions involving physical injuries to persons are based on common law duties of care.

*Monarch Warehouse Co. v. Major Breckenridge Corp.*, 518 S.W.2d 779, 781 (Ky. 1975) (*quoting Webb v. McDaniels*, 205 S.W.2d 511, 513 (Ky. 1947)).

ACS contends that even under a contractual bailment, a bailee is liable in tort for injury to the bailed property during the bailee's use, or use by others with the bailee's consent "which was neither expressly nor impliedly authorized by the contract of bailment" even if the injury resulted from an accident, and not negligence. *Walter v. Louisville Ry. Co.*, 150 S.W. 824, 826 (Ky. 1912).

In Kentucky, even though noncompliance with bailment terms allows a plaintiff to elect to sue in contract or in tort, a plaintiff must elect whether to proceed in contract or in tort for claims arising from the same factual circumstances. *See Cincinnati N. O. & T. P. Ry. Co. v. Dority*, 166 S.W.2d 996, 996 (Ky. 1942); *see Beaver Dam Coal Co. v. Brashear*, 54 S.W.2d 609, 610 (Ky. 1932). Moreover, recent Kentucky case law applied the economic loss rule to bar tort claims that simply mirror claims for breach of contract in order to prevent contract law from

"drown[ing] in a sea of tort." *See Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848-49 (6th Cir. 2002) (*quoting E. River S.S. Corp. v. Transamerica Deleval, Inc.*, 476 U.S. 858, 866 (1985)). The economic loss doctrine preserves the distinction between contract and tort law, "[w]here tort law is well-suited to redressing injuries to persons or property, contract law is well-suited to distributing the risk of economic loss." *Id.* at 851.[4]

Although the bailment contract between Chisholm and ACS incorporates certain duties of care, Chisholm's bailment claim sounds in contract under the economic loss rule. Chisholm's bailment claim arose entirely from Chisholm's contract for cold storage with ACS, and ACS fails to articulate an existing legal duty independent of the contract. Therefore, the economic loss rule requires the breach of bailment claim to sound in contract. Application of the economic loss rule is supported by Chisholm's allegation that the duty ACS owed Chisholm arose from the contract because Chisholm's Amended Complaint states, "[b]y and through the contract, ACS accepted Chisholm's property as a 'bailee for hire.'" (DN 21).

It is undisputed that the bailment contract incorporates verbatim the duty of care required for warehousemen in Kentucky.[5] The contract states that ACS shall not be liable to Chisholm for any loss, damage, or destruction to the "GOODS" unless caused by a "failure to exercise such care in regard to the "GOODS" as a reasonably careful man would exercise under like

---

[4] Three policies also support applying the economic loss rule: "(1) it maintains the historical distinction between tort and contract law; (2) it protects parties' freedom to allocate economic risk by contract; and (3) it encourages the party best suited to assess the risk of economic loss . . . to assume, allocate, or insure against that risk." *Hoover*, 276 F.3d at 848.

[5] *See* Ky. Rev. Stat. Ann § 355.7-204 (West), which states:
> A warehousemen is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care

circumstances." (DN 21). Applying the economic loss rule here preserves the distinction between contract law and tort law as the rule is intended to do. *See Mt. Lebanon*, 276 F.3d at 849.[6]

The heart of ACS's argument is that because Chisholm could have brought its breach of bailment claim in tort then Chisholm's claim necessarily arises in tort. However, Chisholm chose to rely on contractual bailment as the basis for its claim. Therefore, the breach of bailment claim arises in contract.

A separate order will be entered in accordance with this opinion.

August 7, 2013

Charles R. Simpson III, Senior Judge
United States District Court

---

[6] Because the economic loss rule negates ACS's argument that Chisholm's bailment claim sounds in tort, the court will not address ACS's contention that Chisholm's bailment claim is controlled by the warehousemen's duty of care in section 7-204 of Kentucky's Uniform Commercial Code. The statutory duty ACS identifies does not satisfy the independent duty exception because the contract between Chisholm and ACS incorporates the terms of the statute verbatim (DN 63, 5-6). Thus, ACS's argument fails because the statutory duty of care is not independent from the contractual duty of care to which the parties expressly agreed. ACS's statutory argument simply reaffirms that the economic loss rule applies to this breach of bailment claim because Chisholm elected not to bring its claim in tort as a negligence or conversion claim