UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RONALD A. CHISHOLM, LTD.                                           PLAINTIFF

v.                                                       NO. 3:09-CV-00808-CRS

AMERICAN COLD STORAGE, INC.
and AMERICAN COLD STORAGE
NORTH AMERICA, LP                           DEFENDANTS and THIRD
                                                                 PARTY PLAINTIFFS

v.

ABILENE TEXAS FOODS, INC.                         THIRD PARTY DEFENDANT

## **MEMORANDUM OPINION**

This case is before the court on a motion to reconsider or vacate a January 2013 opinion and order, or in the alternative, a motion for summary judgment by the Third Party Defendant, Abilene Texas Foods, Inc. ("Abilene") against the Defendants and Third Party Plaintiffs, American Cold Storage, Inc. and American Cold Storage North America, LP ("ACS") (DN 104).

Abilene requests that the court reconsider or vacate a January 31, 2013 opinion and order, in which the court amended a summary judgment order from dismissing ACS's claims against Abilene "with prejudice" to dismissing ACS's claims "without prejudice." (DN 100). In the alternative, Abilene requests summary judgment on ACS's first amended third-party complaint (DN 101).

For the reasons stated herein, we will deny Abilene's motion to reconsider or vacate and we will grant Abilene's motion for summary judgment on ACS's first amended third-party complaint.

## BACKGROUND

In February 2012, Abilene filed a motion for summary judgment against ACS on the basis that ACS's claims for indemnity and contribution were not proper remedies for Chisholm's underlying contract-claims. In other words, Abilene argued that ACS's proposed remedies would only be proper if the underlying claims were tort-based. In August 2012, ACS filed a motion for summary judgment against Abilene on the same claims. We entered summary judgment in favor of Abilene.[1]

After entering a summary judgment order in Abilene's favor, ACS requested that the court amend the order to make it "without prejudice" and requested leave to file its first amended third-party complaint. ACS's amended complaint asserted alternative theories to shift liability to Abilene in the event that ACS was found liable to Chisholm. We granted both of ACS's motions—its motion to amend and its motion to file an amended third-party complaint—on January 31, 2013.

In the motion at issue now, Abilene requests that we reconsider or vacate the January 2013 order and enter an order denying ACS's motion to alter or amend and ACS's motion to file an amended third-party complaint. Abilene alleges that the court erred in granting ACS's motions, and in doing so created manifest injustice by allowing ACS to have a judgment entered against it with prejudice, and then allowing ACS to assert new claims after its original claims failed (DN 104-1).

In the alternative, Abilene requests summary judgment on the claims in ACS's first amended third-party complaint. Abilene alleges that ACS's new claims—for intentional interference, trespass to chattels, and unjust enrichment—are restyled claims for indemnity, which this court has already held were improper (DN 104-1).

---

[1] We will not restate the lengthy facts of this case—we have outlined them in full in several related opinions.

# DISCUSSION

## I. Abilene's Motion to Reconsider the January 2013 Order Fails

### A. Standard

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Although the Federal Rules of Civil Procedure do not provide expressly for "motions for reconsideration," courts generally construe such motions as motions to alter or amend a judgment under Rule 59(e). *E.g.*, *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F. 2d 201, 206 (6th Cir. 1990); *Taylor v. Colo. State Univ.*, No. 5:11-CV-00034-TBR, 2013 WL 1563233, at *8-9 (W.D. Ky. Apr. 12, 2013).

The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (*citing Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)). "It is not the function of a motion to reconsider arguments already considered and rejected by the court." *White v. Hitachi, Ltd.*, No. 3:04-CV-20, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted). The Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (*quoting Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

Under Rule 54(b), the Sixth Circuit also takes a reserved approach to reconsideration: "54(b) is not to be used routinely, or as a courtesy or accommodation to counsel . . . [t]he power which this Rule confers upon the trial court should be used only 'in the infrequent harsh case' as an instrument for the improved administration of justice." *Corrosioneering, Inc. v. Thyssen Env't Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986) (*citing Panichella v. Pa. R.R. Co.*, 252 F.2d 452, 454 (3d Cir. 1958)); *see Curtiss-Wright Corp. v. Gen. Elec.* Co., 466 U.S. 1, 9 (1980).

Applying this standard, the Sixth Circuit has held that a Rule 54(b) motion to reconsider requires that: (1) the district court must expressly direct the final judgment as to one or more, but fewer than all the claims or parties; and (2) the district court must expressly determine that there is no just reason to delay appellate review . . . [the court] must clearly explain why it has concluded that immediate review of the challenged ruling is desirable." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994).

### B. Fed. R. Civ. P. 54(b) Applies

We will deny Abilene's motion to reconsider or vacate this court's January 31, 2013 opinion and order because our grant of leave to amend was appropriate under Fed. R. Civ. P. 54(b) and Fed. R. Civ. P. 15 (DNs 99 and 100). In that opinion, we analyzed the Sixth Circuit's factors for district courts to consider in determining whether or not there is no just reason to delay under Fed. R. Civ. P. 54(b). Those factors are: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issues a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;

(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, etc.. *Corrosioneering*, 807 F.2d at 1283.

We recognized that Abilene would be inconvenienced by granting the motion to amend and allowing ACS to file its first amended third-party complaint, but in comparison to the other factors and the competing interests of the remaining parties, Abilene's inconvenience did not rise to the level of prejudice that would warrant denying ACS's motions (DN 99). The undisputed facts indicated that ACS's claims were interconnected to the remaining unadjudicated claims (DN 99). ACS's claims against Abilene in its original third-party complaint were entirely dependent on the outcome of the unadjudicated claims that Chisholm raised against ACS. Thus, the possibility of review by an appellate court would be mooted if ACS is not found liable to Chisholm. Also, the connection between the remaining claims would likely require an appellate court to reconsider the same claims.[2]

We properly granted ACS's motions (DNs 89 and 89) and we will deny Abilene's motion at issue here—to alter, amend, or vacate that order (DN 99).

II. **Abilene's Alternative Motion for Summary Judgment Against ACS**

A. **Standard**

Fed. R. Civ. P. 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party moving for summary judgment bears the initial burden of specifying a basis for its motion by demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Not every factual dispute between the parties

---

[2] The district court's discretionary judgment "should be given substantial deference, for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956).

will prevent summary judgment—the disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). After the moving party meets this burden, the nonmoving party bears the burden of showing "specific facts showing that there is a genuine issue for trial." *Id.* at 248 (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Plaintiffs must offer evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at 322. A "mere scintilla of evidence is insufficient" because there must be evidence on which a jury could find for the nonmoving party. *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (*quoting Anderson*, 477 U.S. at 252)).

However, the evidence must be construed in the light most favorable to the party opposing the motion. *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962)). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255.

### B. Summary Judgment for the Claims in ACS's Amended Complaint

We will grant Abilene's motion for summary judgment (DN 104) on all counts in ACS's first amended third-party complaint: Count I, intentional interference with contractual relations—specifically, interference with another's performance of his own contract; Count II, trespass to chattels; and Count III, unjust enrichment (DN 101).

#### 1. ACS's Procedural Argument Fails—Abilene's Motion is Timely Here

ACS argues that we should deny Abilene's motion for summary judgment because it was filed after the deadline for filing dispositive motions in this case (DN 107). ACS also argues that Abilene did not request leave to file its motion for summary judgment (DN 104).

A scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." *Andretti v. Borla Performance Indus. Inc.,* 426 F.3d 824, 830 (6th Cir. 2005) (*citing* Fed. R. Civ. P. 16(b))). However, this court stated that "we recognize that Abilene will be inconvenienced by another round of motion practice…" (DN 99). We anticipated the need for additional filings in our previous opinion.[2] Thus, we will grant Abilene leave to file its motions here—allowing Abilene to address the new claims in ACS's amended third-party complaint.[3]

**2. Count I: ACS's Intentional Interference Claim Fails**

ACS's amended third-party complaint states "[t]o the extent this Court determines that ACS breached its agreement with Chisholm, which ACS denies, any breach on the part of ACS was the result of Abilene's conduct in requesting the release of Goods without advising Chisholm of such releases and without obtaining authority from Chisholm to request such releases." (DN 101 ¶ 32).

Kentucky law limits tortious interference claims to situations in which a defendant causes a third party to breach its contract with the plaintiff in limited circumstances. *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995). Kentucky does not recognize "intentional interference with another's performance of his own contract," a tort permitting one to recover when another person allegedly causes the plaintiff to breach its own contract. *Id.* at 1079-80. In its response, ACS requests that the court conclude that *CMI* was wrongly decided in order for the court to recognize a new business tort (DN 107). ACS does not identify any

---

[2] We will not enter a separate order modify the scheduling order as we will grant Abilene's motion for summary judgment here. Thus, we see no need for Abilene to file additional claims regarding these issues.
[3] We will not address the merits of Abilene's argument that ACS does not have standing to bring its amended third-party claims (DN 104-1). An "injury in fact" is a concrete and particularized, actual or imminent invasion of a legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 555 (1992). ACS contends, and this court agrees, that it has properly alleged an imminent invasion of a legally protected interest if ACS is found liable to Chisholm (DN 107).

Kentucky authority which permits a party to assert a tort based on the premise that the defendant caused the plaintiff to breach its own contract (DN 107).

*CMI* holds that the business tort ACS alleges—intentional interference with another's performance of his own contract—is not recognized in Kentucky, and *CMI* applies here. *CMI* demonstrates that Kentucky is reluctant to adopt new business torts involving parties in contractual relationships. *See id.* We see no reason to recognize a tort that has not been previously recognized—especially in light of the fact that the only courts to consider whether Kentucky would recognize such a tort have concluded that it would not. *See CMI*, 918 F. Supp. at 1079; RESTATEMENT (SECOND) OF TORTS (1965).[4]

Thus, ACS's argument that Kentucky should recognize a new business tort for "intentional interference with another's performance of his own contract" fails. We will grant summary judgment to Abilene on this claim.

### 3. Count II: ACS's Trespass to Chattels Claim Fails

ACS contends that Abilene is liable for trespass to chattels and states that "as the bailee of Chisholm's goods, ACS had the right to possession of the Goods" and that Abilene "by and through its conduct, intentionally dispossessed ACS of the Goods [ACS] had a right to possess." (DN 101 ¶¶ 38-39).

In Kentucky, a trespass to chattels claims requires "intentionally dispossessing another of the chattel or using or intermeddling with a chattel in the possession of another." *Madison Capital Co., LLC v. S & S Salvage*, 794 F. Supp. 2d 735, 740 (W.D. Ky. 2011) *motion to certify*

---

[4] The Kentucky Court of Appeals' recent unpublished opinion, *Atmos Energy Corp. v. Honeycutt*, held that the intentional interference tort ACS asserts is not recognized in Kentucky, No. 2011-CA-000601-MR, 2013 WL 285397 (Ky. Ct. App. Jan. 25, 2013). We find it instructive because it further evidences that Kentucky would not adopt the new tort.

*appeal granted,* 4:08-CV-00134-JHM, 2011 WL 3678796 (W.D. Ky. Aug. 22, 2011), *aff'd*, 507 F. App'x 528 (6th Cir. 2012).

The Kentucky Court of Appeals has cited the Restatement to outline the parameters of a trespass to chattels claim. *Ingram Trucking, Inc. v. Allen*, 372 S.W.3d 870 (Ky. Ct. App. 2012) (*citing* RESTATEMENT (SECOND) OF TORTS: TRESPASS TO CHATTEL § 217 (1965)). Abilene contends, and the court agrees, that the Restatement outlines and provides Abilene an affirmative defense to ACS's claim, such that ACS's trespass claim fails (DN 104-1). We will only address one of Abilene's proposed defenses here—that consent is a complete defense to a claim for trespass to chattels.[5]

Under the Restatement § 252: Consent of Person Seeking Recovery, "[o]ne who would otherwise be liable to another for trespass to a chattel or for conversion is not liable to the extent that the other has effectively consented to the interference with his rights." RESTATEMENT (SECOND) OF TORTS: TRESPASS TO CHATTEL § 252 (1965).

ACS's response argues that it did not "effectively consent" to Abilene invading its possessory interest in the Goods. ACS contends that pursuant to the Restatement, which states that "[t]o be effective, consent must be . . . to the particular conduct, or to substantially the same conduct," ACS did not consent. *Id.* §§ 252 cmt. a, 892A.

Here, however, ACS's own submissions establish that ACS did, in fact, consent to the release of Chisholm's goods to Abilene. ACS admitted that its release of the goods to Abilene was done willingly and upon what ACS believed to be the express instructions of Chisholm (DN

---

[5] We will not address the merits of Abilene's argument that the Restatement also provides a defense to ACS's claim because "the pending dispute between Abilene and Chisholm disposes of ACS's attempt to create its own claim involving the same property." (DN 104-1). Although that argument may be valid, we will grant summary judgment based on the consent defense alone.

76-1).[6] ACS's argument that Abilene obtained the goods by trespass fails in light of the fact that ACS voluntarily released them to Abilene based on Chisholm's authorization.[7] *Cf. Anderson v. Pine S. Capital, LLC.*, 177 F. Supp. 2d 591, 603 (W.D. Ky. 2001) ("Kentucky law recognizes that when a plaintiff consents to a transfer of property, he no longer has a cause of action for conversion.") (*quoting Gross v. Citizens Fidelity Bank Winchester*, 867 S.W.2d 212, 214 (Ky. Ct. App. 1993)); *Adams' Adm'r v. Callis & Hughes,* 69 S.W.2d 711, 713 (Ky. Ct. App. 2934) ("To enter or otherwise invade the premises of another by authority or permission of the owner or person in possession is not a trespass. To commit a trespass upon the premises of another, the entry must be unauthorized.").

It is undisputed that ACS consented to the release—based on its own explanation of the facts and the law in prior briefs—and ACS does not argue that Chisholm withdrew its authorization (DNs 107 and 108). Although ACS claims that the scope of its consent, which was based on Chisholm's instructions, can be limited by Abilene's subjective intent in obtaining

---

[6] In ACS's memorandum in support of its motion for summary (DN 76-1, 9, 12), ACS set forth the following facts:

> 43. On September 29, 2008, [Jackie] Kraay [at Chisholm] sent the following e-mail to De La Fuente [at ACS]:
> Abilene [] is allowed to have access to Chisholm's inventory and paperwork until further notice. If you [ACS] have any questions, please contact me [Chisholm], otherwise please forward the paperwork to Ryan [at Abilene] when requested. Thanks! Jackie
>
> 45. On October 6, 2008, Kraay [at Chisholm] sent the following e-mail to De La Fuente [at ACS]: Confirming that I [Chisholm] gave authorization for Abilene to have access to [Chisholm's] inventory, INCLUDING warehouse receipts and withdrawal notices.
>
> 47. De La Fuente's understanding of the September 29, 2008, email was that ACS should release the goods stored for Chisholm's account to Abilene.
>
> By these emails, [ACS submits] that Chisholm authorized ACS to release the Goods pursuant to Abilene's instructions. In this case, ACS relied on Chisholm's emails and released the Goods to Abilene pursuant to Abilene's instructions.

[7] We need not address the merits of ACS's argument that ACS did not consent to Abilene's "particular conduct" of requesting and receiving the goods from ACS because Abilene knew that Chisholm had not approved such a release (DN 107). In a previous opinion in this case we found that Chisholm authorized ACS to release its meat to Abilene. In other words, Chisholm's instructions were sufficient authorization for ACS to release Chisholm's meat and ACS, as a bailee, delivered the goods with due care pursuant to Chisholm's instructions. *See Ronald A. Chisholm, Ltd., v. Am. Cold Storage Inc.*, No. 3:09-CV-00808-CRS, 2013 WL 2967668, *3-6 (W.D. Ky. July 31, 2013).

-10-

Chisholm's goods, whether or not there was a dispute between Abilene and Chisholm regarding Abilene's right to receive the goods is irrelevant here. Here, ACS consented to the release—the very act that it claims constitutes trespass. ACS does not cite any Kentucky authority to support its argument regarding whether Abilene's knowledge limits the scope of ACS's consent (DN 107).[8] Thus, ACS's trespass to chattel claim fails—there is no issue of material fact here because ACS consented to the release of Chisholm's goods to Abilene.

### 4. Count III: ACS's Unjust Enrichment Claim Fails

To prevail on a claim for unjust enrichment ACS must prove that: (1) a benefit was conferred upon Abilene at ACS's expense; (2) the benefit resulted in an appreciation to Abilene; and (3) Abilene accepted the benefit under circumstances that would render retention of the benefit without payment to ACS for the value of the benefit unjust. *Guarantee Elec. Co. v. Big Rivers Elec. Corp.,* 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987).

Abilene argues that ACS did not confer a benefit on Abilene to satisfy the first element of the claim (DN 104-1). ACS counter argues that Abilene was conferred a benefit because ACS released the goods to Abilene at its own expense, and that Abilene could then fulfill its obligations to customers and buy new farm equipment with the money it received from sales to those customers (DN 107).

ACS's argument fails for two reasons. First, ACS has consistently maintained that the benefit to Abilene will only be at ACS's expense if ACS is held liable to Chisholm (DNs 96 and 101). In its amended third-party complaint (DN 101 ¶¶ 44-45), ACS asserts

> To the extent that this Court finds ACS liable to Chisholm . . . Abilene received the benefit of ACS's release of the Goods at the expense of ACS.

---

[8] ACS cites *Duncan v. Scottssdale Med. Imaging, Ltd.,* 70 P.3d 435, 440 (2003) (*citing Hales v. Pittman,* 576 P.2d 493, 498 (1978)), for the proposition that anything greater than the conduct consented becomes an actionable tort. Here, these cases are not instructive because they address the extent of a patient's informed consent in medical malpractice and battery cases.

> To the extent that this Court finds ACS liable to Chisholm . . . Abilene's conduct with regard to the release of the Goods would result in a deprivation of economic benefit to ACS and an unjust enrichment to Abilene.

The alleged benefit conferred upon Abilene (the goods) is only related to the expense that ACS may incur if ACS is found liable to Chisholm. Assuming for purposes of argument that Chisholm prevails over ACS, ACS's possible expense is not a benefit to Abilene, but the legal result of ACS's failure to comply with its contract with Chisholm. It seems that ACS is attempting to recast its failed indemnity and contribution claims as one for unjust enrichment.

Second, in releasing the goods to Abilene, ACS was merely complying with its contractual obligation to Chisholm—the goods did not belong to ACS. Thus, ACS's claim that it conferred a benefit to Abilene is inaccurate. ACS's performance of its contractual duties was not a benefit provided to Abilene at ACS's expense; rather, ACS simply fulfilled its obligation to Chisholm. For the reasons outlined above, ACS's claim for unjust enrichment fails.

A separate order will be entered in accordance with this opinion.

August 19, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**