UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RONALD A. CHISHOLM, LTD.                                                                    PLAINTIFF

v.                                                                       CIVIL ACTION NO. 3:09CV-808-CRS

AMERICAN COLD STORAGE, INC., et al.                                                      DEFENDANTS

**MEMORANDUM OPINION**

The United States Court of Appeals for the Sixth Circuit vacated the summary judgment granted in favor of the defendants, American Cold Storage, Inc. and American Cold Storage North America, LP (herein collectively "ACS") in this case, and remanded the matter to this court for trial on the question of liability. The Court of Appeals found that, "after drawing all inferences in favor of the nonmoving party, [Ronald A. Chisholm, Ltd.,]" the evidence concerning the question of ACS' liability was not "so one-sided that one party must prevail as a matter of law." (DN 141, p.6). As the Court of Appeals found that a genuine issue of material fact exists as to the meaning of the term "inventory" in an email exchange between the parties concerning access to "inventory," the question of liability must be tried to a jury. (DN 141, pp. 5-6).

The Court of Appeals also remanded the issue of the effect, if any, of a contractual limitation on damages in this case. We did not address the merits of the argument concerning this provision in our prior opinion. The Court of Appeals remanded this issue so that the court could properly consider Chisholm's argument.

The matter is now before the court on motion of ACS for partial summary judgment

concerning the effect of this limitation of liability provision contained in the warehouse receipt issued to Chisholm upon delivery of Chisholm's meat products for storage at ACS' facility.

Section 9(d) of the warehouse receipt states:

> IN THE EVENT OF LOSS, DAMAGE OR DESTRUCTION TO GOODS FOR WHICH THE COMPANY IS LEGALLY LIABLE, STORER DECLARES THAT COMPANY'S LIABILITY SHALL BE LIMITED TO THE LESSER OF THE FOLLOWING: (1) THE ACTUAL COST TO STORER OF REPLACING, OR REPRODUCING THE LOST, DAMAGED, AND/OR DESTROYED GOODS, TOGETHER WITH TRANSPORTATION COST TO WAREHOUSE, (2) THE FAIR MARKET VALUE OF THE LOST, DAMAGED AND/OR DESTROYED GOODS ON THE DATE STORER IS NOTIFIED OF LOSS, DAMAGE AND/OR DESTRUCTION, (3) 50 TIMES THE MONTHLY STORAGE CHARGE APPLICABLE TO SUCH LOST, DAMAGED AND/OR DESTROYED GOODS, (4) $0.50 PER POUND FOR SAID LOST, DAMAGED, AND/OR DESTROYED GOODS, PROVIDED, HOWEVER THAT WITHIN A REASONABLE TIME AFTER RECEIPT OF THIS WAREHOUSE RECEIPT, STORER MAY, UPON WRITTEN REQUEST, INCREASE COMPANY'S LIABILITY ON PART OR ALL OF THE GOODS IN WHICH CASE AN INCREASED CHARGE WILL BE MADE BASED UPON SUCH INCREASED VALUATION; FURTHER PROVIDED THAT NO SUCH REQUEST SHALL BE VALID UNLESS MADE BEFORE LOSS, DAMAGE OR DESTRUCTION TO ANY PORTION OF THE GOODS HAS OCCURRED.

(capitalization appears in original).

The Kentucky Uniform Commercial Code provides for such a limitation in a warehouse receipt. KRS 355.7-204(2) provides that

> Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable; provided, however, that such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates may be charged on such increased valuation, but that no such increase shall be permitted contrary to a lawful limitation of liability contained in the warehouseman's tariff, if any. No such limitation is effective with respect to the warehouseman's liability for

conversion to his own use.[1]

Chisholm does not dispute that the Kentucky statute permitted ACS to contractually limit its potential liability for loss or destruction of goods; such a provision is conspicuous in the ACS warehouse receipt, emphasized in all capital letters. Rather, Chisholm urges that ACS' breached the terms of the warehouse receipt and is therefore precluded from enforcing the damages limitation provision. This is a wholly nonsensical argument. The very language of the limitation of damages is directed to liability of the warehouseman. The provision only comes into play if there is a breach of the terms of the receipt; that is, the warehouseman is found liable for loss or damage to the warehoused goods on grounds other than conversion of the goods to the warehouseman's own use. To accept Chisholm's argument that a breach precludes the warehouseman from asserting the limitation would render the limitation of damages meaningless and emasculate the statute authorizing it.

Chisholm urges that "[a] jury must decide whether ACS breached its contractual and statutory obligation to protect Chisholm's property. It must therefore also determine whether the damages limitations that appear in Section 9(D) of the parties' contract are enforceable," citing *West Kentucky Coal Co. v. Nourse*, 320 S.W.2d at 314. The *West Ky. Coal* case is inapposite, however. In *West Ky. Coal* the plaintiff sought specific performance of an option contract for the purchase of land. The defendant urged, in part, that the option had been obtain through fraud, and that specific performance should be denied due to the plaintiff's failure to provide information obtained during exploratory drilling. The parties presented evidence and the court denied specific performance, finding that the plaintiff failed to provide the defendant with required drilling information. In affirming the district court's decision, the Court of Appeals noted that

---

[1] This is the language which was in effect at all relevant times. The statutory language has since been amended, without change to the statute's substance.

The courts have been careful to exercise the extraordinary and delicate right of specific performance only in cases that are entirely free from fraud, illegal or inequitable conduct and, in addition, they have required strict compliance with all terms of the contract by those who request its exercise. [citations omitted]." *West Ky. Coal*, 320 S.W.2d at 314-15.

Neither does the case of *Amalgamated Industries, Ltd. v. Tressa, Inc.*, 69 Fed.Appx. 255 (6th Cir. 2003) bear any similarity to the case at bar. In *Amalgamated*, a dispute arose concerning performance under a license agreement. The district court found that Amalgamated had breached the agreement by providing Tressa a hair color base formula which proved to be unstable. The court found that the agreement was thus "effectively rescinded" by Amalgamated's breach and that Amalgamated's claim for breach of contract against Tressa could not stand. 69 Fed.Appx. at 260. *Amalgamated Industries* did not involve a warehouse receipt, and it did not opine as to the effectiveness of a limitation on a warehouseman's liability.

As stated in *Hazard Coal Corp. v. Knight*, 325 S.w.3d 290, 298 (Ky. 2010), "[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court. [citation omitted]."

The parties do not suggest, nor do we find, that there is any ambiguity in the limitation of liability provision in ACS' warehouse receipt. Therefore, the provision "will be enforced strictly according to its terms." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). In the event of a finding of liability, damages owed by ACS to Chisholm will be limited in accordance with the terms of the warehouse receipt.

A separate order will be entered this date in accordance with this opinion.

January 21, 2016

**IT IS SO ORDERED.**



Charles R. Simpson III, Senior Judge
United States District Court