UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RONALD A. CHISHOLM LTD.                                                              PLAINTIFF

v.                                                         CIVIL ACTION NO. 3:09-CV-00808-CRS

AMERICAN COLD STORAGE, INC. and
AMERICAN COLD STORAGE
NORTH AMERICA, LP                                                                 DEFENDANTS

**MEMORANDUM OPINION**

I. Introduction

This matter is before the Court on Plaintiff Ronald A. Chisholm, Ltd.'s ("Chisholm") motion for partial summary judgment, ECF No. 165. Defendants American Cold Storage, Inc. and American Cold Storage North America, LP (collectively, "ACS") responded, ECF No. 170. Chisholm replied, ECF No. 168.

Chisholm's claims arise from an allegation that ACS released meat products to a third party without Chisholm's authorization. Amend. Compl. ¶ 12, ECF No. 21. Chisholm asserts breach of contract, breach of fiduciary duty and the covenant of good faith, and breach of a contractual bailment. *Id.* at 5–7. At a pretrial conference, Chisholm indicated that it is not required to mitigate damages, either because the warehouse agreement contains a liquidated damages provision or as a matter of law. Order 2, ECF No. 164. This Court ordered Chisholm to file the present motion for partial summary judgment on the mitigation issue. *Id.*

For the reasons stated below, the Court will grant partial summary judgment to Chisholm on the mitigation issue.

1

II. Background

In support of its motion for partial summary judgment, Chisholm points to two provisions of the Contract Terms and Conditions ("warehouse agreement"), which are on the reverse side of the warehouse receipts and invoices issued by ACS to Chisholm. Compl. Ex. A, ECF No. 1-2. Chisholm argues that together, they constitute a liquidated damages clause. Mem. in Support Mot. Part. Summ. J. 1–2, ECF No. 165-1. Section 9(d) of the warehouse agreement provides:

> IN THE EVENT OF LOSS, DAMAGE OR DESTRUCTION TO GOODS FOR WHICH THE COMPANY IS LEGALLY LIABLE, STORER DECLARES THAT COMPANY'S LIABILITY SHALL BE LIMITED TO THE LESSER OF THE FOLLOWING: (1) THE ACTUAL COST TO STORER OF REPLACING, OR REPRODUCING THE LOST, DAMAGED, AND/OR DESTROYED GOODS TOGETHER WITH TRANSPORTATION COSTS TO WAREHOUSE, (2) THE FAIR MARKET VALUE OF THE LOST, DAMAGED, AND/OR DESTROYED GOODS ON THE DATE STORER IS NOTIFIED OF LOSS, DAMAGE AND/OR DESTRUCTION, (3) 50 TIMES THE MONTHLY STORAGE CHARGE APPLICABLE TO SUCH LOST, DAMAGED AND/OR DESTROYED GOODS, (4) $0.50 PER POUND FOR SAID LOST, DAMAGED, AND/OR DESTROYED GOODS, PROVIDED, HOWEVER THAT WITHIN A REASONABLE TIME AFTER RECEIPT OF THIS WAREHOUSE RECEIPT, STORER MAY, UPON WRITTEN REQUEST INCREASE COMPANY'S LIABILITY ON PART OR ALL OF THE GOODS IN WHICH CASE AN INCREASED CHARGE WILL BE MADE BASED UPON SUCH INCREASED VALUATION; FURTHER PROVIDED THAT NO SUCH REQUEST SHALL BE VALID UNLESS MADE BEFORE LOSS, DAMAGE OR DESTRUCTION TO ANY PORTION OF THE GOODS HAS OCCURRED.

Compl. Ex. A 2, ECF No. 1-2. Section 9(e) further provides:

> The COMPANY'S liability referred to in Section 9(d) shall be STORER's exclusive remedy against COMPANY for any claim or cause of action whatsoever relating to loss, damage and/or destruction of GOODS and shall apply to all claims including inventory shortage and mysterious disappearance claims unless STORER proves by affirmative evidence that COMPANY converted the GOODS to its own use. STORER waives any rights to rely upon any presumption of conversion imposed by law. In no event shall STORER be entitled to incidental, special, punitive, or consequential damages.

*Id.*

2

III. Legal Standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* The Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV. Analysis

Chisholm argues that it is entitled to partial summary judgment as to ACS's mitigation defense because (1) Section 9 of the warehouse agreement is a liquidated damages clause, rendering evidence of mitigation irrelevant to determining damages, (2) even if Section 9 is not a liquidated damages clause, evidence of mitigation would only reduce the amount of Chisholm's actual damages, and (3) evidence of a salvage sale agreement it entered into with a former party to this action does not constitute mitigation in this case. ACS responded in opposition to these points and argues that, as a preliminary matter, Chisholm's motion should be denied based upon the "mend the hold" doctrine.

    a. Whether Chisholm's Motion Should be Denied on the Basis of the "Mend the Hold" Doctrine

ACS argues that, as a preliminary matter, Chisholm's motion for partial summary judgment should be denied on the basis of the "mend the hold" doctrine. The "mend the hold" doctrine is a common law doctrine adopted in some jurisdictions that "limits the right of a party to a contract suit to change his litigating position." *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 362–63 (7th Cir. 1990). "[T]he phrase is a nineteenth-century wrestling term, meaning

to get a better grip (hold) on your opponent." *Id.* at 362. The Supreme Court named the doctrine when it stated, "[w]here a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold." *Railway Co. v. McCarthy*, 96 U.S. 258, 267–68 (1877).

ACS argues that the "mend the hold" doctrine bars Chisholm from asserting for the first time in this motion that Section 9 is a liquidated damages clause and thus seeking damages that it has recovered through its agreement with Abilene Texas Foods, Inc. ("Abilene"), a former party to this case. Resp. Mot. Part. Summ. J. 3, ECF No. 170. ACS argues that Chisholm has taken this new position to avoid deducting amounts mitigated by Abilene's payment, thus seeking a double recovery. *Id.* at 2–3. The "mend the hold" doctrine, if applicable, could bar this liquidated damages argument because Chisholm previously asserted in response to a prior motion for summary judgment that "no double recovery for previously mitigated losses is sought" and that it "does not seek damages for any amount that it has recovered, through an agreement intended to mitigate its losses, from [Abilene]." Chisholm's Resp. Mot. Summ. J. 14, 17, ECF No. 78. In its reply, Chisholm argues that the "mend the hold" doctrine does not apply in this case because (1) it is not recognized in Kentucky, and (2) Chisholm's present argument is not inconsistent with its prior position on damages. Reply Support Mot. Part. Summ. J. 3–4, ECF No. 168.

ACS's argument here is meritless. Chisholm correctly points out that ACS cites no Kentucky case law adopting the doctrine. Reply Support Mot. Part. Summ. J. 4, n.2, ECF No. 168. Absent a showing that this doctrine applies to contracts cases in Kentucky, this Court declines to apply it here.

4

> b. <u>Whether Section 9 of the Warehouse Agreement is a Liquidated Damages Clause</u>

In its motion, Chisholm asks for this Court to "issue an opinion and order holding that Section 9 of the 'Terms and Conditions' in the parties' warehouse agreement is a liquidated damages clause." Mem. in Support of Mot. Part. Summ. J. 18, ECF No. 165-1. If Section 9 is a liquidated damages clause, Chisholm argues, evidence of mitigation is irrelevant because ACS would have a contractual obligation to pay that liquidated sum. *Id.* at 9. In response, ACS asserts that there are no liquidated damages clauses in the warehouse agreement and, specifically, that Section 9 is not a liquidated damages clause. Resp. Mot. Part. Summ. J. 5–6, ECF No. 170. Rather, ACS argues that Section 9 is a limitation on damages because it does not "specify a set amount of damages that was determined by the parties" and "because [Chisholm's] actual damages, if any, are not difficult to ascertain." *Id.* at 7–8. ACS argues that because Section 9 is not a liquidated damages clause, it is unnecessary to discuss Chisholm's arguments as to the relevance of its mitigation efforts. *Id.* at 9. In its reply, Chisholm reiterates that Section 9 is a liquidated damages clause because it can be "ascertained by 'mere computation,' 'with reasonable certainty,' and in accord with 'fixed rules,'" evidenced by the ease with which the Court calculated such damages at a recent status conference. Reply in Support Mot. Part. Summ. J. 5–6, ECF No. 168 (citations omitted).

"Determining whether a clause is a liquidated damages provision is [a] matter of law." *G.D. Deal Holdings, Inc. v. Baker Energy, Inc.*, 501 F. Supp. 2d 914, 923 (W.D. Ky. 2007). The Sixth Circuit defines liquidated damages as "a definite sum or amount, which has been determined by agreement of the parties or by litigation." *Jewett, Bigelow & Brooks v. Detroit Edison Co.*, 274 F. 30, 32 (6th Cir. 1921). Kentucky has adopted the language of the Restatement (Second) Contracts § 356(1) (1981) pertaining to liquidated damages: "Damages for breach by

5

either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss." *Mattingly Bridge Co., Inc., v. Holloway & Son Constr. Co.*, 594 S.W.2d 702, 704–05 (Ky. 1985). While liquidated damages clauses are viewed "as a useful commercial tool to avoid litigation to determine actual damages," such clauses should only be enforced "where the actual damages sustained from a breach of contract would be very difficult to ascertain." *Id.* at 705. Finally, Kentucky describes liquidated damages as "an amount that is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *BSME Contracting, Inc. v. Jones*, No. 2011-CA-000588-MR, 2012 WL 333766, at *2 (Ky. Ct. App. Feb. 3, 2012) (citing *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005)).

   Section 9(d) of the warehouse agreement limits ACS's liability in the event of lost goods to the lesser of four alternatives. Compl. Ex. A 2, ECF No. 1-2. Read alone, Section 9(d) appears to simply place a cap on ACS's liability. But, when read in conjunction with Section 9(e)— which explains that the limitations outlined in Section 9(d) are Chisholm's exclusive remedy and excludes pursuit of "incidental, special, punitive, or consequential damages"—as a whole, Section 9 constitutes a liquidated damages clause. *Id.* Reading the plain meaning of the two provisions combined, Section 9(e) serves to preclude Chisholm from recovering any damages other than the lesser of four alternatives outlined in Section 9(d). These four alternatives can be easily ascertained with "reasonable certainty" by "mere computation." *See BSME Contracting, Inc.*, 2012 WL 333766, at *2. For example, on June 15, 2016 the parties stipulated that the applicable provision of the warehouse agreement is Section 9(d)(3), which limits damages to

6

fifty times the monthly storage rate. Order, ECF No. 163. With a monthly storage charge of $0.0079 per pound of product and 1,729,549.33 pounds of product, ACS's liability under Section 9(d)(3) is $683,171.99. *Id.* This sum was easily calculated during a pretrial conference. Thus, because Section 9 provides a definite amount that can be ascertained by mere computation and excludes other types of damages, it is a liquidated damages clause.

The parties do not dispute the reasonableness of the amount calculated by Section 9(d)(3), so there is no need for this Court to decide whether the provision is unenforceable as a penalty.[1] However, ACS asserts that Chisholm's actual damages, if any, would not be difficult to ascertain, which if true would render the liquidated damages clause unenforceable. *See Mattingly Bridge Co., Inc.*, 594 S.W.2d at 705. ACS asserts that to find Chisholm's actual damages, it "can follow the customary steps to establish the quantity of goods for which it claims loss, and the value thereof." Resp. Mot. Part. Summ. J. 8, ECF No. 170. This lack of difficulty, ACS argues, shows that the parties did not intend to agree to a liquidated damages provision. *Id.* ACS fails to adequately combat the enforceability of the liquidated damages provision. There are many factors that enter into a calculation of damages, including loss of not only goods, but profits and other "incidental, special, punitive, or consequential damages." Compl. Ex. A 2, ECF No. 1-2. That Section 9(e) precludes such damages is indicative of the parties' intention to avoid litigating the measure of them. To avoid litigating such issues, parties may agree to liquidate damages, as these parties have. Therefore, Section 9 is an enforceable liquidated damages clause.

In Kentucky, where a court finds a provision "to be one for liquidated damages, the sum stipulated forms, in general, the measure of damages in case of a breach, and the recovery must

---

[1] There is no evidence in the record indicating that application of this provision would result in an amount that is "grossly disproportionate" to the damages. *See Mattingly Bridge Co., Inc.*, 594 S.W.2d at 705. In fact, every alternative listed in Section 9(d) is directly tied to actual costs or amounts of goods. Thus, this provision does not appear to be a penalty.

7

be for that amount. No larger or smaller sum can be awarded even though the actual loss may be greater or less." *Coca-Cola Bottling Works (Thomas) Inc. v. Hazard Coca-Cola Bottling Works, Inc.*, 450 S.W.2d 515, 519 (Ky. 1970). Thus, "the mitigation requirement 'has no application to a contract to pay absolutely a certain sum of money.'" *Branch Banking & Tr. Co. v. Pacific Life Ins. Co.*, 985 F. Supp. 2d 844, 849 (W.D. Ky. 2013) (citing *Superior Woolen Co. Tailors, Inc. v. M. Samuels & Co., Inc.*, 293 S.W. 1078, 1079 (1927)). This Court previously observed:

> This is in conformity with basic principles of mitigation. *See* 25 Williston on Contracts § 66:96 (4th ed.) ("Where the defendant is under a unilateral or independent contractual obligation to pay a liquidated sum of money, the ordinary measure of damages for nonperformance is the sum of money itself with interest at the legal rate from the time when performance was due…").

*Id.* Therefore, evidence of mitigation by Chisholm, the nonbreaching party, is irrelevant to a determination of damages in this case because of the liquidated damages clause found in Section 9.

Because this Court finds that Section 9 of the warehouse agreement is a liquidated damages clause, this Court need not address Chisholm's alternative argument regarding how to apply evidence of mitigation to the damages calculation. In addition, this Court need not decide whether Chisholm's salvage sale agreement with Abilene constitutes mitigation.

V. Conclusion

The Court will grant partial summary judgment to Chisholm on the mitigation issue and will find that Section 9 of the warehouse agreement is a liquidated damages clause, rendering evidence of mitigation irrelevant to a determination of damages. The Court will enter an order in accordance with this opinion.

December 6, 2016



Charles R. Simpson III, Senior Judge
United States District Court